QUARTETTE MUSIC CO. *v.* HAYGOOD.

[67 South. 211.]

FOREIGN CORPORATIONS. *Right to do business. Enforcement of debts.*

Under Code 1906, section 935, requiring every foreign corporation doing business in this state to file in the office of the secretary of state, a copy of its charter of incorporation, such a corporation, not having complied with this statute, cannot enforce in the courts of this state the collection of a note given to it by a citizen of this state for a debt incurred by him while conducting, for the corporation, a branch house in this state.

APPEAL from the circuit court of Lee county.

HON. CLAUDE CLAYTON, Judge.

Suit by the Quartette Music Company against J. L. Haygood and another. From a judgment overruling a demurrer to the plea of defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*George H. Hill,* for appellant.

The court erred in overruling the demurrer. It should have been sustained; the plea filed by appellees presenting no defense to this action. The plea sets out that J. L. Haygood was appellant's agent; that appellant was engaged in selling to the public, sheet music and music in book form; that said Haygood acting as such agent sold said music and gave the note on which suit is brought with G. W. Long as security. While section 935 of Code of 1906, provided that foreign cor-

porations failing to file a copy of their charter are sub-ject to a fine, yet there is no provision in said section that foreign corporations failing to file a copy of their charters shall be denied the right to bring and maintain an action to recover on their contracts.

· I submit that the weight of authority holds that they can maintain an action. Cases holding to the contrary are generally based upon a statute denying foreign cor-porations the right to maintain an action. I do not. think this court has passed upon the precise case at. bar; but in *Watts Mercantile Co.* v. *Buchanan,* 92 Miss. 544, our court' approves the New York Case which held. that, ''that kind of plunder which holds onto the prop-erty, but pleads the doctrine of *ultra vires* against the obligation to pay for it, has no recognition or support in the laws of this state.''

Can it be said that an agent of a foreign corporation. failing to file a copy of its charter, can embezzle the funds coming into his hands as such agent and then be permitted to set up the defense that has been interposed in this case? I think not. See *Decell* v. *Oil Mill, etc.,* 83 Miss. 346; *Howe* v. *Jelly,* 68 Miss. 323; *Gilliam* v. *Brown,* 43 Miss. 641; 19 Cyc. 1306, and cases there cited.

In 19 Cyc. 1306, we find the following language: ''It. has been held even by courts which deny the right. of foreign corporations to maintain an action on the bond of an agent, where it has been doing business in violation of law, that its failure to comply with the law is no defense in an action by it against the agent to recover money or property received by him to its use, on the ground that the agent is estopped to dispute the title of his principal to the money which he has received for him.''

It surely will not be held that it is against the public. policy of the state for Haygood to execute his note, with Long as security, for money which he admits came into his hands by virtue of his employment. In *Decell* v..

*Oil Mill,* heretofore cited, our court holds with reference
to the failure to pay privilege tax, that: ''The law
making void the contracts of those in reference to their
business carried on in disregard of the privilege tax
act, does not shield Mr. Decell. It has no reference to
dealers *inter sese* and their agents in the conduct of their
business. It does not authorize or condone embezzle-
ment, nor prevent partners or stockholders from re-
quiring honest settlements among themselves or from
their agents.'' I desire to call attention to the fact that
at the time this case was decided, that we had a statute
making void the contracts of all persons, firms and cor-
porations failing to pay the required privilege tax and
denying them access to our courts. Even if appellee's
plea is sufficient (which I deny), they are estopped to
plead the failure of the Quartet Music Company to file
a copy of their charter.

If it had been the intention of the legislature to deny
foreign corporations the right to maintain an action
on its contracts, it would have so expressed itself as has
a number of the legislatures of the different states.
There can be no reason or justice in denying appellant
to recover from its agent on the note sued on.

*C. P. Long* and *J. W. P. Boggan,* for appellees.

Section 935, Code of 1906, requiring foreign corpora-
tions to file in the office of the secretary of state of
Mississippi, a copy of their charter, is not a revenue
statute, but is penal. Its object is not to raise money,
but for the protection of the people of the state of
Mississippi against fakes, frauds and blue sky corpora-
tions. The penalty imposed for a failure to obey it,
is a fine just like any other offense, and the corpora-
tion failing to obey its mandate, is guilty of a crime, and
while this section does not render void and unenforce-
able any contract made by a foreign corporation not
having complied with its terms and carrying on business

in Mississippi in violation thereof, we have only to drop back a page or two, to section 914, of the same Code, and we find the following language: .

"But such foreign corporations shall not do or commit any act in this state, contrary to the laws or policy thereof, and shall not be allowed to recover on any contract made in violation of the law or public policy;" so that while counsel for appellant is correct in saying that section 935 does not render void a contract, or refuse the enforcement thereof, in express terms, still section 914 does not say so, and the language could not be clearer or plainer or more easily understood.

We will now notice the cases cited by counsel for appellant, as authority for his contention that the demurrer should have been sustained: *Watts Mercantile Co.* v. *Buchanan,* 92 Miss. 544; in this case, the plaintiff or holder of the note, was absolutely free from any illegal conduct and the defendant corporation was seeking to avoid the payment of a note given by it, and at the same time, keep the proceeds or property derived by it, by virtue of the giving of said note, on the ground that it, the defendant itself, had violated the law in making the contract, and this the court held, and very properly held, could not be done. Otherwise, a robber could be turned loose on a community, and when sued for what he had gotten, or suit was brought to recover possession thereof, he would only have to set up his own illegal act in order to defeat recovery.

*Decell* v. *Oil Mills, etc.,* 83 Miss. 350, is the next case cited by appellant. This case arose under the revenue statutes, and it is a well-established and adjudicated fact, that under these statutes, the question of the protection of the public or public policy is not involved; the only purpose being to raise revenue and that the same rules of construction that apply in such cases, do not apply in cases arising under the statutes or on contracts made in violation of statues, which are penal, and which have nothing to do with the question of raising revenue.

The cases of *Howe* v. *Jolly,* 68 Miss. 323, and *Gilliam* v. *Brown,* 43 Miss. 641, were both expressly overruled in the case of *Woodson* v. *Hopkins,* in the opinion delivered by Chief Justice Whitfield, in 85 Miss., which is a very interesting and instructive case along this line. In fact, as stated by Judge Whitfield in that case, the case of *Gilliam* v. *Brown,* was overruled in 71 Miss., in the case of *McWilliams* v. *Phillips,* and by the same judge who rendered the opinion in the case of *Gilliam* v. *Brown.*

In the case of *Woodson* v. *Hopkins,* as expressly stated by the judge rendering the opinion, the transactions which had been jointly carried on between Woodson & Hopkins with the public, in which Woodson was acting as agent for Hopkins, were not expressly prohibited by any statute, but were such robbing, thieving contracts and so unconscionable, that they were against the public policy of the state of Mississippi; therefore neither the agent nor the principal would be allowed to go into any court, either of equity or law jurisdiction, and complain one against the other, for the courts would leave them just where they found them.

In the case of *McWilliams* v. *Phillips,* in 51 Miss. 196, there was no moral wrong committed by either of the parties in the transaction, out of which the suit grew, McWilliams being the treasurer of the county, and contrary to the statute, having credited Phillips with the price of a whiskey license, when the law said the same could be sold only for cash, and although the price agreed upon was secured by trust deed from Phillips to McWilliams, when McWilliams tried to enforce this trust deed, he was kicked out of court and Phillips was allowed to retain his license and to do nothing, and still it was set up that it was a violation of the law on the part of McWilliams, and a violation of the public policy of the state of Mississippi, on the part of McWilliams in selling a license on credit instead of for cash.

The only other authority cited by counsel for appellant, is 19 Cyc. 1306. The quotation used by him is a part of subdivision B. on said page. If he had carried out the citation, he would have added the following: "Under some statutes however, the rule is otherwise."

So that I take it, that the various decrees by the various courts of the country, are based upon the statutes, and also upon the question of whether the public policy of the state is involved, and are also in line to some extent, with previous decisions of the court on similar questions. In our court, there is almost from the foundation of the state government, a line of decisions, denying access to the courts by one, who in the conduct of his business, in the making of the contract sued on, has violated the penal statutes, or the public policy of the state, commencing with the case of *Wooten* v. *Miller,* 7 S. & M. 385, in which case one Miller, who was a citizen of the state of North Carolina, in the year 1837, placed in the possession of one John R. Wooten, as his agent, a slave named Tony, to be sold or hired by him in Mississippi in violation of the statute of Mississippi, and in pursuance of which agreement, the said Wooten sold the said slave, Tony, in the state of Mississippi, contrary to its laws, and took a note for one thousand and fifty dollars, for the same and transferred this note to his, Wooten's father, in payment of a debt due by him to his father, and which note was paid, and on account of which transaction, suit was afterwards brought by Miller against the two Wootens, father and son. Judgment was rendered in the court below, in favor of the plaintiff Miller, but on appeal, was reversed and the sole defense in this case was that the contract between Miller and Wooten involved a violation of the laws of the state of Mississippi, and was invalid, which contention was sustained by the supreme court, and the case reversed.

The next case along this line, is that of *Deans* v. *McLendon,* 30 Miss. 343, which also involves a violation

of the law against importation of and sale of slaves,. without certain conditions precedent being performed.. In this case, the plaintiff in error, Bartlett Deans,. brought suit against McLendon *et al,* on two prom- issory notes given for the purchase money of two slaves, and the defense was that these slaves had been. imported and sold in the state of Mississippi, contrary to the law, and that therefore, the notes were uncollec- table. In the opinion, the following language was. found: "It is not now to be controverted, that no ac- tion can be maintained upon a contract, the considera- tion of which is either immoral in itself, or prohibited by law; or which is made in contravention of public poli- cy. It is equally well settled, that every contract which grows out of, or is in connection with an illegal or im- moral act, is absolutely void, and will not be enforced in law or equity."

"Courts of justice, in the observance of these rules, are not influenced by any consideration of respect or tenderness for the party who insists upon the illegality of a contract; but exclusively by reasons of public policy. The object is to punish the active agent in the vio- lation of the law, by withholding from him, the antic- ipated fruits of his illegal act; and thus, by deterring all persons from violating its mandates, to give sanc- tity to the law and security to the public."

There are also other cases in the early Mississippi re- ports, involving contracts which were made in violation of these slave acts, but we deem it sufficient to only cite the two above.

In the case of *Bohn* v. *Lowery,* 77 Miss. 424, the question involved was whether a physician, who had not obtained a license, as required by Code of 1892,. 1258, etc., could recover for professional services ren- dered by him, and it was held that he could not. In this case, Judge Terral, who delivered the opinion of the court, cites *Deans* v. *McLendon,* and also speaks of

the fact that there is a distinction between cases arising under revenue statutes, and those arising under and by virtue of dealings and contracts made in violation of penal statutes, announcing the doctrine: "That where' the doing of an act is prohibited by legislative authority, under a penalty, it cannot constitute a consideration to support a contract."

The law is the same in reference to recovery of attorney's fees, by one practicing law without license, in violation of the statute. We do not suppose it is necessary to cite authorities to this effect.

In 83 Miss., in the case of *Orrell* v. *Manufacturing Co.,* which is a very long opinion, and which was delivered by Judge Truley, in the second paragraph, on page 824 of the opinion, we find the following language, or announcement of the manner in which the public policy of the state is arrived at: "The public policy of the government is to be found in its statutes, and when they are not distinctly spoken, then in the decisions of the courts and the constant practice of the government officials, but when the lawmaking power speaks upon a particular subject, over which it has constitutional power to legislate, public policy in such a case is what the statute enacts."

In the case of *Young* v. *Insurance Co.,* 91 Miss. 715, being the last part of the opinion, and in which case a revenue statute was being considered, or rather a contract involving such statute, the doctrine announced in *Bohn* v. *Lowery,* 77 Miss. 426, was referred to and adopted as the true doctrine. '

In *Rideout* v. *Mars,* 54 So. 81, the doctrine that neither a court of law or equity, will lend its aid to either of two parties who are *in pari delicto,* is recognized as the true doctrine in Mississippi, although an exception to the same is announced in that case, where the "paramount public interest requires the intervention of the court," and while we do not agree with the

doctrine announced in that case by the judge who de-
livered the opinion, and cannot see how the public in-
terests could possibly be subserved by enforcing a con-
tract which had already been made and entered into
many months beforehand, between two individuals which
was illegal and unlawful, still the doctrine announced
in that case, has no bearing on the question involved
herein.

The decision however, may be correct on the ground
that the statute fixed the only price at which insurance
could be sold to persons of a certain class, and the
decision shows further the great anxiety on the part
of the courts of Mississippi, to enforce the public pol-
icy of the state, and that when it comes to enforcing
the same, the court will not hesitate to set aside or mod-
ify any fixed rule of law or decision.

A resort to authorities from other states affords
very little light on the question involved in this case,
as each particular court, in arriving at what is the pub-
lic policy of a state in which it is sitting, is governed,
not only by the statutes of the state, on the subject
being decided, but also by previous decisions and rec-
ognized rules, etc., of such state.

We have argued this case on the idea that the
parties were *in pari delicto.* However, the plea sets up
that appellee, J. H. Haygood, who was acting as agent
of appellant corporation, knew nothing about the busi-
ness being carried on in violation of the law, until
long after the happening of the events involved in this
case, and therefore he would stand in much better con-
dition, even if the rule of law as to enforcement of these
contracts, was not as we contend and as we think the
courts of Mississippi have decided.

As to the appellee, G. W. Long, who is a mere volun-
teer in the matter, and who, as shown by the plea, had
absolutely no connection with any of the transactions
until the making of the contract, evidenced by the note

itself, certainly there could be no contention that he was in any fault, or was a party to any violation of the law, or to carrying on any illegal business in any way whatever, and we respectfully submit that the case should be affirmed.

Cook, J., delivered the opinion of the court.

Appellant, a Texas corporation, filed its declaration in the circuit court of Lee county against J. L. Haygood and G. W. Long, demanding judgment for two hundred and twenty-five dollars and interest, evidenced by a promissory note signed by these defendants. To this declaration defendants filed this plea, viz.:

''Now comes the defendants in the above-styled cause, and for plea in their behalf say: That the debt sued for in this cause is not a legal and just demand, against defendants, because the plaintiff, the Quartette Music Company, is a foreign corporation, incorporated under the laws of the state of Texas, and has not qualified to do business in the state of Mississippi, as is required by chapter 24 of the Code of 1906 of the state of Mississippi. That the consideration of said debt was for business done by said corporation, in the state of Mississippi, without first being qualified to do business in the state of Mississippi, as is required by law. A certificate of which hereto attached marked 'A.' And, by reason of same, defendant should not be required to pay said sum, or any part thereof, and ask to be discharged with their reasonable costs.''

This plea was sworn to.

Afterwards, by consent of the court, J. L. Haygood filed an amended plea as follows:

''And now comes the defendant in the above-styled cause and for plea in this behalf say: That the debt sued for in this cause is not a legal, subsisting, and valid demand against defendants, because the plaintiff, the Quartette Music Company, was at the time of the con-

traction thereof and is now, a foreign corporation, incorporated under the laws of the state of Texas, and had not, at the time of the contraction of said debt, qualified to do business in the state of Mississippi, as is required by chapter 24 of the Code of 1906 of the state of Mississippi. That the note sued on was given to the Quartette Music Company, for a supposed balance of the amount due it by defendant J. L. Haygood, contracted in and about the business of the said Quartette Music Company, carried on in the city of Tupelo, Lee county, Mississippi, in the following manner: The said plaintiff had its domicile and main place of business at the city of Ft. Worth, state of Texas, and was engaged in the sale, among other things, of sheet music and music in book form, and about the ―― day of ――, 19―, employed the defendant J. L. Haygood to manage and conduct a branch house for it in said city of Tupelo, and from the time of said employment, up to the time of the giving of said note, continuously kept on hand in the said city of Tupelo, for sale to the citizens of the state of Mississippi, and such other persons as desired to buy said sheet music and music in book form, a large stock of such goods, and the same was being constantly sold out and replenished by said plaintiff through and by defendant J. L. Haygood, acting as its agent, up to the time of the giving of said note. That a certificate from Joseph Power, secretary of the state of Mississippi, together with the seal of his said office attached, is hereto annexed, marked 'Exhibit A,' showing the failure of said Quartette Music Company to comply with chapter 24 of the Code of 1906 of the state of Mississippi. And therefore the defendants say that said note was given for the purpose of setting up a business carried on in violation of the laws and public policy of the state of Mississippi, and is therefore void and uncollectable. All of which defendants are ready to verify.''

This plea was sworn to.

Exhibit A is as follows:

"I, Joseph W. Power, secretary of state, in and for the state of Mississippi, do hereby certify that I am custodian of the records of all corporations, authorized to do business, under the laws of the state of Mississippi, as provided by chapter 24 of the Code of 1906 of the laws of said state. That I have made diligent search in my office for the records of qualification under said chapter of a corporation, known as 'Quartette Music Company,' or 'The Quartet Music Company,' and I find, after making diligent search for same that no such corporation as either of the above-named has qualified or been authorized to do business in this state.

"Signed with my hand and official seal this the 15th day of November, A. D. 1912.

"Jos. W. Power, Secretary of State."

Appellant demurred to this plea in the words following, viz.:

"The demurrer of the Quartette Music Company to the plea filed in this cause by J. L. Haygood and G. W. Long, defendants. The said plaintiff demurs to said plea, and prays the judgment of the court if they shall make any further answer thereto; and they show the following causes of demurrer to said plea, to wit: First. Because the law under which said plea is interposed is unconstitutional. Second. Because said plea presents no defense known to the law. Third. For other good causes to be shown at the hearing of this demurrer."

The court overruled the demurrer, and plaintiff appeals.

A long line of decisions of this court support the judgment of the learned trial judge.

Section 935, Code of 1906, provides that:

"Every.... corporation for profit incorporated under or by virtue of the laws of.... any other state.... shall file in the office of the secretary of state a copy of its charter of incorporation."

The statute further provides that: .

Any "foreign corporation which shall not file a copy of its charter or certificate or articles of incorporation ....shall be liable to a fine of not less than one hundred dollars."

In *Bohn* v. *Lowery,* 77 Miss. 427, 27 So. 605, this rule is approved:

"Every contract made for, or about, any matter or thing which is prohibited and made unlawful by any statute, is a void contract though the statute itself does not mention that it shall be so, but only inflicts a penalty on the defaulter, because a penalty implies a prohibition, though there are no prohibitory words in the statute."

There are some decisions in our books which apparently conflict with this rule, but they were all overruled by *Woodson* v. *Hopkins,* 85 Miss. 171, 37 So. 1000, 38 So. 298, 70 L. R. A. 645, 107 Am. St. Rep. 275.

*Affirmed.*