## HARLESTON *v.* WEST LOUISIANA BANK.

[91 South. 423. No. 22065.]

1. MINES AND MINERALS. *Bill will lie to compel an accounting as to mineral taken and for discovery, where rent dependent thereon.*

Where the rent or royalty reserved in the leasing of mineral property is dependent on the amount of mineral taken, a bill in equity will lie to compel an accounting by the operator or lessee of the mines, and also for a discovery.

2. INJUNCTION. *Refusal to dissolve temporary injunction to prevent continuing breach of contract held proper.*

Upon a motion to dissolve a temporary injunction, when the allegation of the bill, sustained by the testimony of the complainant, is to the effect that the leasee of a mine has breached his contract and is continuing to remove from the mine sand and gravel and to use the complainant's machinery and appliances therefor, all in violation of its contract, it was proper to overrule the motion and to continue the temporary injunction until a hearing upon the merits.

APPEAL from chancery court of Panola county.

HON. JAS. G. McGOWAN, Chancellor.

Bill by the West Louisiana Bank against Ashleigh Harleston in which a writ of sequestration was issued and a temporary injunction granted, and from a decree declining to dissolve the injunction, the defendant appeals. Affirmed and remanded.

See, also 126 Miss. 593, 89 So. 257.

*Whittington & Osborn*, for appellant.

The learned counsel for the appellee cite 27 Cyc. 716, in support of their contention that where the rent or royalty is dependent upon the amount of mineral taken, a bill will lie for an accounting. We did not overlook this proposition in our brief. We stated on page 11 and again on page 14 that under proper circumstances a bill for an accounting would lie, but there is a vast difference between an accounting and an injunction. The precise question presented to this court is the matter of the dissolution of the injunction. It is not a question of an accounting. If the injunction is dissolved, the suit may be maintained for the account. The burden of the contention of the learned counsel for the appellee is that it is entitled to an accounting. and it is significant that they have not cited in their brief a single authority to support their injunction.

The brief of the learned counsel for the appellee is silent upon the most important proposition involved in this cause. They have not said a word about the solvency of Harleston.

They did not mention the matter of the failure in the bill of complaint to allege an irreparable injury. The answer denied that Harleston was insolvent; the return of the officer shows the property owned by Harleston of the value of more than ten thousand dollars has been levied upon; the answer and the testimony shows that Harleston owns property of the value of fifty-five thousand dollars in the state of Mississippi. The sworn testimony of the appellant, uncontradicted by the appellee, shows that he was amply solvent.

We pointed out that there were no allegations of irreparable injury on pages 5 and 6 of our brief, and we further pointed out that the injury could not be irreparable where the compensation was fixed in dollars and cents, as shown on page 13 of our brief. There must be proper allegations before the complainant is entitled to even an accounting in a chancery court under the provisions of section 556 of the Code of 1906, and section 161, of the Constitution of 1890. *Barnard* v. *Sykes,* 72 Miss. 297.

We might admit, for the sake of argument, that under the allegations of the bill of complaint, the appellee was entitled to an accounting, but this would not entitle it to an injunction unless Harleston, the defendant, were insolvent or unless an irreparable injury was being committed.

The bank's compensation was fixed. It was a certain royalty per ton, and as shown by the authorities cited on page 13 of our brief, the injury is not irreparable where the compensation is fixed and where there is no allegation of insolvency. We refer in this connection to 27 Cyc. 659. Two things, however, must exist before the bank would be entitled to an injunction. The bank must be in a position where it cannot be compensated for damages. Its compensation must be such that it cannot be measured by a pecuniary standard, or Harleston must be insolvent. Harleston is solvent, and the damages are fixed at so much per ton in the contract.

We submit in conclusion that the bank was not entitled to an injunction, that the decree of the court below should be reversed, and that the injunction should be dissolved. The bank was not entitled to a forfeiture, nor yet to a re-entry. 27 Cyc. 708-717. Like any other landlord, the Bank might be entitled to its rent, but not to an injunction. 27 Cyc. 716.

*Rainwater & Stovall,* for appellee.

We submit that this conduct on the part of Harleston was not such as to commend him to the favorable consideration of a court of conscience. We maintain that the only remedy that the bank had to pervent Harleston from continuing to operate the pit using its appliances selling sand and gravel and appropriating the proceeds to himself was by a writ of injunction and we therefore insist that the motion to dissolve should be overruled.

Counsel for appellant insists that mining leases are to be assimilated to leases generally and that under the laws of Mississippi the landlord cannot declare a forfeiture on account of failure of the tenant or lessee to pay rent. In answer to this contention we state that complainant's bill is not based upon the idea that the bank had a lien nor deed in order to declare a forfeiture of the lease, but on the contrary set up specifically several instances showing that the defendant himself by his conduct and by his dealings with the leased property had declared a forfeiture. Counsel cites 27 Cyc. 716, and quotes the first part of the paragraph, section eight as follows: "Actions for the recovery of rents and royalties under mining leases are in general subject to the rules governing actions for the recovery of rent under ordinary leases; but counsel failed to quote that part of said section immediately following which reads as follows: 'Where the rent or royalty reserved in the leasing of mineral property is dependent on the amount of mineral taken, a bill in equity will lie to

compel an accounting by the operators or lessees of the mine.' "

In the case at bar the amount of the royalty stipulated for in the contract was not fixed, but only a minimum price per ton. The amount was known only to the defendant Harleston, which was to be not less than fifty thousand tons per annum and for any excess over said amount, which was to be accounted for by Harleston, and additional royalties, to be paid correspondingly.

Counsel in his brief refers to the case of *Davis* v. *Hart,* 66 Miss. 642, in support of his contention that where the answer denies the equity of the bill and complainant fails to sustain his allegations, a motion to dissolve should be sustained. By reference to the case cited, it will be found that a bill was filed and an injunction issued and an answer under oath was filed denying all material allegations of the bill and the complainant wholly failed to sustain the allegations of the bill and the complainant wholly failed to sustain his allegations, in the case cited, *supra.* The answer being sworn to became evidence for the defendant but in the case at bar the answer was not sworn to and hence is not evidence for the defendant. The bill of complaint however is sworn to and the allegations in the main are supported by the proof.

The prayer of complainant's bill is for an accounting, for a discovery (which has not yet been made) for a writ of injunction, for a writ of sequestration and for general relief.

The case now before the court is solely upon the motion to dissolve the injunction which we respectfully submit should be overruled and the decree of the chancellor affirmed.

SYKES, P. J., delivered the opinion of the court.

The bill of complaint of the appellee, West Louisiana Bank, in short, alleged: That it was a banking corporation of Louisiana. That in due course of business it had

advanced large sums of money to one Dawson and The Peli-
can Construction Company to assist them in operating
gravel pit in Panola county, Miss.   That certain collateral
was given the bank by these parties, and also it held mort-
gages on the gravel pit and equipment which was being op-
erated by them. That the gravel pit was owned by one Walk-
er and was being operated by these people under a contract
with him.   That Dawson and the Pelican Construction
Company borrowed some money in Mississippi, and gave
deeds of trust in this state on the collateral and property
which they had pledged to the complainant in Louisiana.
That in order for complainant to protect itself from great
loss it became necessary for it to purchase these Mississippi
mortgages, which it did, paying full value therefor, and
that it was necessary for it to foreclose these mortgages
and purchase in the property at the sale.   This property
consisted of the necessary equipment to operate the gravel
pit, and was located at the gravel pit in Panola county,
Miss.   That this property was of little value, and wholly
insufficient to satisfy the indebtedness due the complain-
ant, and that in order to make the property available and
protect its interest it became necessary for the complain-
ant to lease the gravel pit from Walker.   The contract be-
tween Walker and the other parties having ended.   The
bill sets out in great detail why it became necessary for it
to purchase the Mississippi securities, to foreclose the
property, to purchase it at this sale and lease the gravel
pit from Walker in order to realize upon the original in-
debtedness owed it by Dawson and the Construction Com-
pany in Louisiana.   It then sets out in detail the terms
of the lease of the gravel pit by it from Walker.   There-
upon the complainant subleased the pit and its equipment
to the appellant Harleston, which contract is in writing.
Under this contract Harleston was to operate the pit with
all the accessories located on the land, consisting of rail-
road track, engines, shovels, plows, and other appliances
belonging to complainant.

The complainant in its contract with Walker had agreed to pay Walker one dollar per car for all gravel and sand removed from pit.   Harleston in his contract with complainant agreed to pay it fifteen cents a ton on all road gravel removed and fifteen cents a ton on all sand removed from the pit.   There were also other stipulations here made in case the sand was not removed from the pit.   Harleston further agreed to remove not less than fifty thousand tons a year of sand and gravel from the pit, thereby making the minimum royalty payable to the complainant of seven thousand, five hundred dollars a year, and that if he failed to do this the contract should become forfeited on demand of the bank.   Settlements were to be made by Harleston on the 15th day of each month.   It was further agreed that that complainant should have the right through its agent to examine the books of account of Harleston for the purpose of ascertaining the correctness of all settlements had or desired.   There are other stipulations in the contract not necessary to be mentioned.

The bill alleges that the defendant Harleston has breached the contract by failing to pay the complainant the amounts agreed to be paid for the gravel at the appointed time.   It then goes into detail to explain about two checks the defendant gave it upon which he stopped payment. Second, it alleges that the defendant has refused to allow the complainant through its agent to examine his books. Third, that he had failed to account to complainant for the sales of sand and gravel over and above the amount of fifty cents a ton, as he was obligated by the contract (which part of the contract we have not set out).   It then alleges on information and belief that Harleston solicited Walker to enter into a contract with him for the operation of the pit independent and in defiance of the complainant's rights, thereby intending and attempting to abandon his contract with the complainant.   The bill alleges that the defendant is indebted to the complainant in a sum approximating twelve thousand dollars, and asks for discovery.   An itemized list of the property turned over by complainant to the

defendant under the contract is shown, and it is alleged that the defendant is daily using this property without authority, and declines and refuses to surrender it to the complainant, although defendant has forfeited his contract and right to use the property. It also itemizes the personal property owned by the defendant and in use by him at the pit, and states that all of the property is insufficient in value to pay the complainant the amount due it by the defendant under his contract. The prayer was for a writ of sequestration for the sheriff to take charge of all of the personal property, and that Harleston be temporarily enjoined from using any of the property or from operating the mine or from selling or disposing of the sand or gravel. The writ of sequestration was issued and a temporary injunction granted.

The answer of the defendant challenges the right of the bank to maintain the suit upon the ground that the bank is doing business in Mississippi contrary to its charter and against the laws of the state of Mississippi. The answer further alleges that the reason these checks were not paid was because Walker, the owner of the gravel pit, notified the defendant, Harleston, that the bank had breached its contract with him, and that he would look to Harleston to pay him. There are other allegations contained in the answer unnecessary to be here stated. A motion was made to dissolve the temporary injunction, which was heard upon bill, answer, and oral testimony. The chancellor declined to dissolve the temporary injunction, and from his decree this appeal is here prosecuted to settle the principles of the case.

The contention of counsel for the appellant in brief is that, if Harleston unjustly refused to pay the royalty to the bank, the bank had a plain, adequate, and complete remedy at law, and that it is confined to this remedy, citing 27 Cyc. 716. The text therein is as follows:

"Actions for the recovery of rents and royalties under mining leases are in general subject to the rules governing actions for the recovery of rent under ordinary leases.

Where the rent or royalty reserved in the leasing of mineral property is dependent on the amount of mineral taken, a bill in equity will lie to compel an accounting by the operator or lessees of the mines"—citing *Swearingen* v. *Steers,* 49 W. Va. 312, 38 S. E. 510.

According to the contract in this case the royalty reserved is dependent upon the amount of mineral taken, and therefore a bill in equity to compel an accounting is maintainable. In fact in this case the bill alleges the agreement allowing the complainant to inspect the books of the company and a refusal on his part to allow complainant to do so. It shows an amount due the complainant, and also asks that the complainant be compelled to discover, which is, of course, an equitable right.

Without going into the merits of the testimony, we think the chancellor was justified in believing that the defendant was attempting to operate the pit in violation of his contract with the complainant, thereby damaging the equipment owned by the complainant and depleting the pit of the sand and gravel. These facts were sufficient to justify the continuance of the temporary injunction.

It is next contended by the appellant that the complainant bank in making these contracts and agreements relating to the gravel pit, and in purchasing the personal property under the foreclosure sale, was doing business in this state in violation of section 935, Code of 1906 (section 4111, Hemingway's Code). That the case of *Quartette Music Co.* v. *Haygood,* 108 Miss. 755, 67 So. 211, is decisive of this question.

In the Haygood case it will be noted that the music company, a foreign corporation, had a branch house in the city of Tupelo, and was conducting its regular business there, without having complied with section 935, Code of 1906, by filing a copy of its charter with the secretary of state.

The question sharply presented here is whether or not the complainant bank by the series of transactions, namely, purchasing the Mississippi mortgages, foreclosing

them, purchasing the personal property at the foreclosure sale, leasing the gravel pit from Walker and subleasing it to Harleston, was doing business in Mississippi in violation of this statute. The bill alleges and the testimony shows that the bank had loaned money to certain parties in Louisiana in the regular course of business, taking as security certain collateral and mortgages on the personal property subsequently brought to the gravel pit; that thereafter their debtors gave other mortgages in Mississippi, and for that reason, in order to attempt to realize and collect this indebtedness, it became necessary to transact this business in Mississippi. The end and aim of the entire transaction was but to protect the indebtedness previously contracted in Louisiana. This is not a doing of business in Mississippi, as contemplated by this section of the Code, but is merely the transaction of an isolated piece of business in Mississippi rendered necessary to protect an indebtedness contracted in Louisiana. The mere fact that in order to do this it became necessary to buy the Mississippi mortgages, foreclose them, purchase at the foreclosure sale, lease and sublease the gravel pit, does not make but the one isolated transaction of business, having in view solely and only the one idea of protecting this indebtedness. *Cooper Mfg. Co.* v. *Ferguson et al.,* 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137.

*Affirmed and remanded.*