ITEM CO., LIMITED, v. SHIPP et al.

[106 So. 437.   No. 25250.]

(Division A.   Dec. 7, 1925.   Suggestion of Error Overruled Jan. 4, 1926.)

1. CORPORATIONS. *Foreign corporation held not doing business in state, so as to require filing of copy of charter in order to sue*

Under contract between foreign corporation and one selling its newspapers on his own account for purchase of newspapers on

credit, *held*, that it was not doing business in the state, and was
not required under Laws 1916, chapter 92, section 1, to file copy
of its charter with secretary of state in order to sue in the state
on the contract.

2. CORPORATIONS. *Single transaction by foreign corporation not doing
   business in state.*

An isolated dealing within the state by a foreign corporation is not
doing business in the state, so as to require filing of copy of
charter under Laws 1916, chapter 92, section 1.

*Headnotes 1. Corporations, 14a C. J., Section 3993; 2. Corpora-
tions, 14a C. J., Section 3981; Single isolated transaction by foreign
corporation as "doing business" within state, see note in 10 L. R. A.
(N. S.) 693; 12 R. C. L. 69; 2 R. C. L. Supp. 1385; 4 R. C. L. Supp.
744; 5 R. C. L. Supp. 632.

*Headnotes 1. Schools and School Districts, 35 Cyc., p. 846; 2.
Schools and School Districts, 35 Cyc., pp. 1021, 1038.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by the Item Company, Limited, against W. C.
Shipp and others. Judgment for defendants, and plain-
tiff appeals. Reversed and remanded.

*Robt. L. Bullard,* for appellant.

The principle involved in a decision of this case is of
importance not only to the plaintiff but to every publish-
ing company issuing newspapers and other publications
for circulation and sale in this state. It involves also
the right of every non-resident corporation whatever to
sell its products in the state through agents and local
dealers. The proposition is this:

Can the plaintiff, whose business it is to publish a
daily newspaper in New Orleans, La., maintain a suit
in the courts of this state on a contract for the sale of its
newspapers to a local dealer, to be by him sold to its
subscribers and others, for his own profit, without hav-
ing filed a copy of its charter, if it is a non-resident cor-
poration, with the secretary of state, and payment of

the fees as provided by section 935, Code 1906, as amended by chapter 92, Laws of 1916?

The plaintiff had a right to do all that the special plea alleged that it did, or was doing. It alleged that the plaintiff was ''engaged in business in the state of Mississippi, selling newspapers and perhaps other periodicals in said state, for profit, through agents and news dealers in the state of Mississippi.'' Such and no other is the business alleged to have been done in this state. There is no allegation that the plaintiff did more than sell its newspapers in this state through agents and news dealers.

Now there is not a corporation in the world that has not the right to sell its products in this state *through agents and dealers.* To deny such right would not only violate interstate commerce but to enforce such denial would paralyze the state and bring its inhabitants to starvation within sixty days.

Appellees rely on *Quartett Music Co.* v. *Haygood,* 108 Miss. 755, 67 So. 211. In the Haygood case the plea alleged that the Quartett Music Co. had employed Haygood to *manage and conduct for it a branch house in the city of Tupelo.* It was never held in that case that the plaintiff did not have the right to sell its music publication in the state through agents and dealers, but that to conduct a branch house in this state, wherein it conducted its business generally was in violation of the statute. The case of *Harelston* v. *Louisiana Bank,* 91 So. 423, clearly distinguishes the Haygood case from cases like this.

The Haygood case is unsound, is not supported by sound reason or authority and ought to be overruled. It stands alone in our reports and I have not been able to find a case anywhere on a like statute holding that it denies non-resident corporation, in default of its provisions, access to courts of justice. If there is another, before or since, I have not found it nor found it cited. One of the cases which the writer of that opinion must

have had in mind points out a universal exception to the general rule, the recognition of which would have led to a different result in the Haygood case. That is *Bohn* v. *Lowrey,* 27 So. 604.

The act in question falls squarely within the exception therein pointed out. It does not forbid the nonresident corporation to do business in this state, nor penalize the business done, but provides that those doing business herein shall file a copy of its charter with the secretary of state and pay the fees provided; the object of filing the charter being that it may be ascertained therefrom what fees are payable. It is for a failure to file a copy of the charter and pay the fees that a penalty is imposed. No *action* of the corporation is penalized or made unlawful; only its *non-action* in this respect subjects it to the penalty.

The purpose of the act is not to prevent it from doing anything, and to hold that the legislature intended to penalize the non-complying corporation further than is contained in the act itself is to read something into it not even implied by its language. This court has so construed the act in *Springfield Grocery Co.* v. *Devitt,* 126 Miss. 169, 88 So. 497.

The lower court should have granted our request for a peremptory instruction, and entered judgment for the plaintiff in the amount sued for, with attorney's fees.

*Currie & Currie,* for appellees.

*The* question is whether, under the facts of this particular case, the Item Company, Ltd., was "doing business" in this state. The Item Company, Ltd. is a foreign corporation. It had not filed its charter of incorporation, or its certificate of incorporation in the office of the secretary of state of the state of Mississippi, and paid the fees required by the statute of the state of Mississippi.

It is therefore manifest at the outset that if the appellant was "doing business" in the state of Mississippi

when the debt herein sued for was created, and if said
debt originated in and grew out of said business, it is
precluded on the grounds of public policy from main-
taining this suit in the courts of this state.

Now what are the facts? They are: 1. That A. W.
Case was the *managing agent* of the appellant in this
state. 2. He established agents, agencies and news
stands in this state for the sale of a paper in this state.
3. He engaged in, looked after and *met competition* in
such establishment and sale of the paper in this state.
4. In meeting competition in this state he *altered the
prices* of the paper in this state and paid bonuses. 5.
He *adjusted* disputes growing out of accounts in this
state. 6. He *collected* and receipted for accounts in this
state. 7. He sold and delivered papers to customers
and agents and agencies in this state for the Item Com-
pany, Ltd. 8. He transacted every phase of business
in this state from establishing news stands in this state
at which to sell the New Orleans Item in this state, up to,
or down to (whichever way you please to go) collecting
accounts and conducting lawsuits for the Item Company,
Ltd. 9. The Item Company, Ltd. itself received and ac-
cepted checks drawn on local banks in the city of Hatties-
burg, county of Forrest, state of Mississippi, and collect-
ed the same from said banks. 10. The appellant itself
delivered the newspapers in bails or bundles to the
appellee, Shipp, on the depot platform at Hattiesburg,
in Forrest county, Mississippi, the point of destination,
all charges prepaid, and the appellee, Shipp, carried the
papers onto the streets where he sold them. If this be
not "doing business" in this state, then we ask *how*
may business be done in this state?

In *Hat-Sweat Mfg. Co. v. Davis Sewing Machine Co.*
(U. S.), 31 Fed. 294, 296, it was held: "The agent hav-
ing the management and control of the department of
business of a foreign corporation from which the cause
of action arose was the 'managing agent.'" See also

*Ives* v. *Metropolitan Life Ins. Co.*, 78 Hun, 32, 28 N. Y. Supp. 1030.

A test of whether the appellant was "doing business" in this state would be whether A. W. Case was such agent as that service of process might lawfully be served upon him in a suit filed in this state against the Item Company, Ltd., and bearing in mind the established facts, we cite section 4094, Hemingway's Code, section 920, Code of 1906, and *Saxony Mills* v. *Waggoner*, 94 Miss. 233, 47 So. 899, in which case it was held that the term "agent" as used in the statute means only an agent vested with some general authority and discretion and not a mere employee. Case was such an agent as falls completely under and squarely within the definition of the word "agent" as laid down by this court in the Saxony Mills case.

It is so perfectly manifest from the established facts of this particular case that the appellant was "doing business" in this state that it would seem altogether unnecessary to cite authority defining what constitutes "doing business," but by way of applying the law to these facts see *St. Louis Southwestern Ry. Co. of Texas, plaintiff in error,* v. *Robert Alexander*, 57 L. Ed. (U. S.) 486; *Pennsylvania Lumbermen's Mutual Fire Insurance Company* v. *Charles C. Meyer*, 49 L. Ed. (U. S.) 810; *Connecticut Mutual Life Insurance Company, plaintiff in error,* v. *Linda Y. Spratley*, 43 L. Ed. (U. S.) 569.

The case of *Quartett Music Co.* v. *Haygood*, 108 Miss. 755, 67 So. 211, is directly in point, and under the decision of this court in that case the appellant cannot, contrary to the public policy of this state, maintain this suit in its courts.

Counsel for the appellant cites *City Sales Agency* v. *Smith*, 88 So. 625, and quotes from that case the language of Justice HOLDEN, with which we have no quarrel to make, *but* it will be borne in mind that what this learned justice said in that case was with reference to restrictions or burdens upon interstate commerce, and can

have no application to the facts in the case at bar for the reason that the testimony in the case at bar is conclusive that the transportation had completely ended, and the papers had been delivered in the original and unbroken bundles on the platform of the railroad company at its station in the city of Hattiesburg, the destination of the shipments, and that they were there delivered to the appellee, Shipp, and that he brought them onto the streets in the city of Hattiesburg and sold them.

Having failed to comply with the requirements of the statutes of this state, the reasonable requirements, the requirements imposed upon domestic corporations, or corporations formed in this state, it is contrary to the public policy of this state to permit the appellant to sue in the courts of this state for a debt growing out of business transacted by it in this state.

McGOWEN, J., delivered the opinion of the court.

This case was here once before upon the pleadings. See *Item Co.* v. *Shipp* (Miss.), 99 So. 153.

The declaration filed in this case by the Item Company, Limited, against W. C. Shipp et al. is for the recovery of the balance due on open account arising out of a contract between the parties which we here set out at length:
"To the New Orleans Item:  Party of the first part, of New Orleans, La.  Charge dealer from May 1, 1922. Date, May 2, 1922.

"No. 1.—You may furnish to W. C. Shipp of Hattiesburg, Miss., party of the second part, such copies of the New Orleans Item as he may order, and we, the undersigned, hereby guarantee the payment to you of his bills at their several maturities, all bills being due and exigible on the 10th day of each month following in which the indebtedness shall have been incurred by the said party of the second part; and, in the event of the failure on the part of the party of the second part to meet his bills promptly, we promise severally and col-

lectively, to pay to you on demand, the full amount due, not to exceed the sum of five hundred dollars.

"No. 2.—The said party of the second part agrees to act as dealer for the New Orleans Item for a period of not less than three months. The said party of the second part shall give the Item Company, Ltd., party of the first part, thirty (30) days written notice before resigning as their dealers. This notice can only be given by the said party of the second part after he serves as dealer for the period of months agreed upon in this contract. We, the undersigned, are not to be held responsible for any accounts that may be incurred after the expiration of said thirty (30) days.

"No. 3.—It is further agreed that in case said party of the second part wishes to resign as dealer before the termination of this contract, the party of the second part shall pay whatever expenses are necessary to make this change. It is also agreed that in the event of the resignation of the party of the second part, that he shall show the new dealer all routes and help him to deliver papers for one week, until the new dealer has become familiar with the different routes and subscribers. It is further agreed that the party of the second part shall not act as dealer or distributor for any other New Orleans newspaper until after the party of the second part has been released from this contract.

"No. 4.—We, the undersigned, agree to pay the New Orleans Item the full amount of this bond as damages, if the second party fails in any way to live up to this contract.

"No. 5.—We, the undersigned, agree to pay all attorney fees to party of the first part if this contract is violated and legal proceedings made necessary.

"No. 6.—The dealer agrees to pay 1 & 6/10c for the daily and 2½c for the Sunday Item and it is agreed that he is not to receive any credit for unsold copies. The New Orleans Item, party of the first part, is not to be

held responsible for any accounts due dealer by subscriber.

"No. 7.—The said party of the second part shall turn over a complete list of the subscribers on demand to any duly authorized representative of the New Orleans Item; in case the said party of the second part fails to do this, we agree to pay, upon the date of said refusal, by said debtor, the full amount of this bond, unto the New Orleans Item, party of the first part. The New Orleans Item is the sole owner of the right to distribute the New Orleans Item in Hattiesburg, Miss., and the dealer cannot turn over the list of subscribers to any one else without first getting permission from the circulation manager of the New Orleans Item.

"No. 7½.—Dealer allowed five dollars per week bonus.

"No. 8.—The said party of the second part shall not, at any time, discontinue delivery or cut out any part of the route turned over to him without first getting consent from the circulation manager of the New Orleans Item.

"No. 9.—We, the undersigned, fully understand this agreement. No verbal understanding by any representative of the New Orleans Item is authorized to change this agreement.

"No. 10.—The said party of the second part agrees not to handle any other New Orleans newspaper during the life of this contract.

"[Signed] ·   O. W. GOYER,

W. E. ESTES,

W. C. SHIPP.

"Witness: J. H. Blair.

"Accepted for the Item Co., Ltd., by J. H. Blair."

To this declaration Shipp filed a plea in which he denied, first, the correctness of the account, or that he owed anything thereon. Second, he denied that he committed a breach of the contract. Third, Estes and Goyer denied that Shipp had breached the contract and owed anything thereon. Fourth, all of the defendants joined

in the special plea setting up that the plaintiff was a foreign corporation selling newspapers and other periodicals through agents and news dealers located in the state of Mississippi, and that they should not be bound because the plaintiff had not complied with chapter 92, Laws of 1916, by filing a copy of its charter with the secretary of state.

The plaintiff demurred to this special plea, which demurrer was overruled by the court, and, issue being joined, the following material facts as developed are stated:

The Item Company, Limited, is a foreign corporation domiciled at New Orleans, La., and had not filed its charter of incorporation or a certificate thereof in the office of the secretary of state and paid the fees required by the statute of this state above mentioned. A. W. Case, as managing agent of the appellant, the Item Company, Limited, secured agents, established agencies, and arranged with news stands in this state for the sale of the New Orleans Item; tried to meet the competition in and about the sale of his paper; sometimes altered the price, sometimes paid a bonus to the agent who sold the paper; tried to look after the collections and settlements when disputes arose; sometimes sold and delivered papers to customers for the company. Checks were drawn in favor of the company on banks in Hattiesburg, Miss., and collected by the New Orleans Item. Papers were shipped with carriage charges prepaid to Hattiesburg, and Shipp, one of the defendants, sold and delivered the papers, collecting thereon monthly, sometimes selling extra copies.

There was also an issue of fact as to what was due on the open account sued on. It might be well to state that the way Case and other agents would conduct the business was this: They would go to a town, solicit subscribers, taking a list of such subscribers to Shipp, the agent, who would approve the same; then the New Orleans Item Company, Limited, would ship the additional papers to Shipp to cover this increased business.

Upon this state of the record the court below granted all of the defendants a peremptory instruction, and the plaintiff, the New Orleans Item Company, Limited, prosecutes this appeal.

The court below evidently granted a peremptory instruction to the defendants in favor of the defendants on the idea that plaintiff had not complied with chapter 92, Laws of 1916, by filing a copy of its charter with and paying the fees to the secretary of state. We think the court below erred in granting the peremptory instruction, as we are of opinion that the plaintiff, the New Orleans Item Company, Limited, was not doing business, under this proof, within the contemplation of said chapter 92, Laws of 1916, Section 1 of this chapter is as follows:

"Every company or corporation for profit incorporated under or by virtue of the laws of any government, or of any other state or territory, now or hereafter doing business in this state, shall file in the office of the secretary a copy of its charter or articles of incorporation, or in case such company or corporation is incorporated merely by certificate, then a copy of such certificate duly certified and authenticated. Said charters, articles of incorporation or certificates to be filed shall be duly certified by the president and secretary, or other chief executive of such corporation, and by attaching thereto the corporate seal, and the secretary of state, on the payment of the fees herein provided for shall give certificate that said corporation has filed its charter or articles of incorporation as required by this act, and any foreign corporation which shall not file a copy of its charter or certificate or articles of incorporation, as provided in this act, shall be liable to a fine of not less than one hundred dollars. This section shall not apply to insurance companies, and is not to be taken or construed to change or modify the laws which are directly applicable to the character of corporations."

It is a misdemeanor under this statute for a corporation to do business in the state of Mississippi without

complying with the conditions therein imposed, and the authority relied on evidently in support of appellees' contention is *Quartette Music Co.* v. *Haygood,* 108 Miss. 755, 67 So. 211. The case here before us is clearly differentiated from the case of *Quartette Music Co.* v. *Haygood, supra,* in that the music company, a foreign corporation, had a branch house in the city of Tupelo, and was engaged in carrying on its business at said place without complying with section 935, Code of 1906 (Hemingway's Code, section 4111), which is like chapter 92, Laws of 1916, in its essential details, which is invoked in the present case.

Section 6 of the contract set out above clearly shows that Shipp was to pay the New Orleans Item Company one and six-tenths cents per copy for the daily and two and one-half cents per copy for the Sunday Item, and that he was not to receive credit for unsold copies. We think the record clearly demonstrates that Shipp was engaged in the business of selling newspapers on his own account, and that he was in no sense the agent or a component part of the New Orleans Item Company, Limited.

The New Orleans Item Company, Limited, retained its status as a corporation in this state. That was settled in the case of *Springfield Grocery Co.* v. *Devitt,* 126 Miss. 169, 88 So. 497, wherein Chief Justice SMITH, speaking for the court, said: "Foreign corporations not only have the right to do business in this state by the comity of nations, unless prohibited from so doing by statute, . . . but have been given express permission so to do by section 914, Code of 1906, Hemingway's Code, section 4088."

It will be remembered that this contract here sought to be enforced was one by which the defendant Shipp, as principal, and the defendants Goyer and Estes, his guarantors, contracted for the purchase of newspapers on credit, and it was clear that the contract contemplated a sale of the papers by a foreign corporation from without the state to Shipp, and, so far as this case is con-

cerned, there is nothing upon which to base the idea that thereby Shipp became the agent of this foreign corporation for any purpose any more than a merchant who buys flour under a written contract from a foreign corporation for the purpose of retailing the same within the state.

Under the case of *Harleston* v. *West Louisiana Bank*, 129 Miss. 111, 91 So. 423, it was held that an isolated dealing within the state on the part of a foreign corporation, the West Louisiana Bank, did not constitute doing business within the purview of the *Haygood Case, supra*.

In the case of *City Sales Agency, Inc.,* v. *Smith,* 126 Miss. 202, 88 So. 625, Judge HOLDEN, speaking for the court, said that the facts in that case disclosed that appellant there was a foreign corporation doing business in the city of New Orleans, La.; that it had a resident agent in the state of Mississippi who solicited orders for the sale of motor trucks to be delivered to its agent, Baker, in this state; that Baker, the agent, had no place of business, nor did he sell the motor trucks in this state, but took orders to be accepted and approved by the appellant corporation. The trucks, after being thus sold, would be distributed by the agent, Baker, to the persons who would demonstrate the trucks, and he would either receive cash payments or accept notes and liens upon the trucks to cover the purchase price. Sometimes Baker would have several trucks in the state to be delivered; and, after reasoning out the case, Judge HOLDEN said:

"Therefore we hold that our statute has no application to transactions within the protection of the commerce clause of the federal Constitution."

A single transaction by a foreign corporation does not constitute doing business with the state. *Jameson* v. *Simonds Saw Co.,* 2 Cal. App. 582, 84 P. 289; *First Nat. Bank* v. *Leeper,* 121 Mo. App. 688, 97 S. W. 636; *John Deere Plow Co.* v. *Wyland,* 69 Kan. 255, 76 P. 863, 2 Ann. Cas. 304.

In the instant case the contract shows, and the proof sustains the position, that the New Orleans Item Company, Limited, shipped the papers from New Orleans, La., to Hattiesburg, Miss., and that usually they were paid for by checks drawn by Shipp upon the local bank at Hattiesburg, and the mere fact that Case, the traveling solicitor or representative of the New Orleans Item Company, Limited, sometimes sold a copy of the paper, and solicited subscribers for the agents, the papers to be delivered usually and generally by and through this agent, did not constitute doing business within the meaning of chapter 92, Laws of 1916, and the court below erred in granting a peremptory instruction upon this theory of the case.

Appellant insists that he is entitled to a judgment here for the full amount sued for; but we think the testimony of the defendant Shipp makes an issue of fact as to what amount, if any, is due on account of the contract here involved.

*Reversed and remanded.*