PETERMAN CONSTRUCTION & SUPPLY CO. *v.* BLUMENFELD.

(Division A. Jan. 13, 1930.)

[125 So. 548. No. 28298.]

Loving & Loving, of Columbus, for appellant.

Magruder, Walker & Magruder, of Starkville, for appellee.

**McGowen, J.,** delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee, Blumenfeld, rendered by the circuit court on an appeal from a court of a justice of the peace. The suit was based upon a subscription contract of one hundred dollars, on which a payment of twenty-five dollars was made, leaving a balance due of seventy-five dollars. The subscription contract was finally executed by the appellant on November 27, 1925, with about two hundred subscribers (of which number appellee was one), all citizens of Mississippi, and the appellant was a foreign corporation, chartered under the laws of the state of Illinois, and there domiciled.

At the time of and prior to the date of the execution of this contract, appellant was engaged in the business of promoting the organization of canning factories, creameries, cheese factories, and other such industrial enterprises, and this was accomplished by sending representatives into a community to secure subscribers in a sufficient amount, and when so secured, to the satis-

faction of the company, the written subscription was approved as a contract, and this company would thereupon construct a building in the community, and equip it with the machinery adapted to the particular industrial enterprise thus promoted. From the evidence in this case it appears that this foreign corporation was performing a function authorized by its charter, and was engaged in the promotion of its business in securing subscribers, making a contract, and complying therewith.

During the late summer and fall of the year 1925 the appellant had two authorized agents in and around Starkville, Miss., soliciting farmers and others to sign this subscription contract. One of the agents was a native of that county; the other came there to assist the native agent, and was a citizen of Alabama. The written subscription contract provided that each subscriber thereto would pay to appellant the sum of one hundred dollars in partial payments, and in consideration thereof the Peterman Construction & Supply Company were to construct a factory building and equip the plant as a canning factory with the necessary machinery ready to operate. Attached to the subscription paper were detailed specifications as to the house, material, labor, and machinery to be furnished in connection therewith. It was stipulated that, when satisfactory subscriptions were received, amounting to fourteen thousand five hundred dollars, the appellant would accept and approve the subscription contract, and, if there were subscriptions in excess of this sum, the excess was to become the property of the subscribers. More than twenty thousand dollars was subscribed by more than two hundred subscribers, and on November 27, 1925, at Starkville, Miss., the appellant approved and accepted the subscription contract, by which it became bound to erect the building and equip it with machinery to be located in Starkville, Miss. Thereupon appellant secured a permit from the city authorities for the said construction,

and began placing the material on the ground, and the actual work of construction began between December 15 and December 20, 1925.

On December 17, 1925, the appellant procured from the secretary of state a certificate that it had complied with section 4528, Hemingway's 1927 Code (section 935, Code of 1906). This statement of fact constitutes the only business transacted by the appellant in this state so far as appears from this record.

The sole defense interposed to appellant's suit herein was that the contract was solicited, procured, and executed by appellant at a time when it had not complied with said section 4528, Hemingway's 1927 Code. Appellee contended that the appellant was doing business in this state without complying with said law, and that the said contract was therefore void and unenforceable in the courts of this state. The court below peremptorily instructed the jury to find for the appellee, adopting appellee's view, and judgment accordingly was entered.

Section 4528, Hemingway's 1927 Code (section 935, Code of 1906), reads as follows: "Every company or corporation for profit incorporated under or by virtue of the laws of any government, or of any other state or territory, now or hereafter doing business in this state, shall file in the office of the secretary a copy of its charter or articles of incorporation, or in case such company or corporation is incorporated merely by certificate, then a copy of such certificate duly certified and authenticated. Said charters, articles of incorporation or certificates to be filed shall be duly certified by the president and secretary, or other chief executive of such corporation, and by attaching thereto the corporate seal, and the secretary of state, on the payment of the fees herein provided for shall give certificate that said corporation has filed its charter or articles of incorporation as required by this act, and any foreign corporation which shall not file a copy of its charter or certificate or articles of incorporation, as provided in this act, shall be liable to

a fine of not less than one hundred dollars. This section shall not apply to insurance companies, and is not to be taken or construed to change or modify the laws which are directly applicable to the character of corporations."

There is no issue of fact here. The appellant did comply with this section on December 17, 1925, after the execution of this contract on November 27th. This contract was solicited from two hundred persons within this state, each of whom was separately and severally bound to the appellant for the amount of his subscription. The written contract was wholly executed within the state, and was to be wholly performed within this state. Did the acts of appellant in securing this contract and executing same, as above detailed, constitute "doing business in the state," within the meaning of our statute? There is no question involving interstate commerce presented here.

Appellant contends that it was not doing business within the state until it entered upon the performance of this contract by beginning actual construction work, and at this time it complied with our statute, and further contends that this transaction was an isolated one, and therefore the statute was not violated. Appellant's contention seems to be that the soliciting of subscriptions and the execution of the contract, in which appellant was engaged through its agents for a period of several months, was merely preliminary to the transaction of the business for which the corporation is organized. To this the appellee replies that the business of promoting the organization of creameries, and procuring the execution of the contract for the construction of the building, and the sale of the machinery, were all acts which, if done, were within the exercise of the functions for which the corporation was created, and that the case is controlled by section 4528, Hemingway's 1927 Code (section 935, Code of 1906), and the case of Quartette Music Co. v. Haygood, 108 Miss. 755, 67 So. 211.

Appellant contends that the case is controlled by the cases of Item Co., Ltd., v. Shipp et al., 140 Miss. 699, 106 So. 437, and Harleston v. West Louisiana Bank, 129 Miss. 111, 91 So. 423. In Item Co., Ltd., v. Shipp et al., it was shown that the Item Company, a foreign newspaper corporation, contracted with Shipp to sell its papers in a certain locality; that an agent of the foreign corporation secured some subscriptions, collected some money, and turned it over to Shipp; and that the newspaper corporation shipped its papers to the agent, and the agent made deliveries thereof. We held that this was an isolated piece of business—the collection by the agent of certain subscriptions and turning the money over to the agent, Shipp—and that the whole transaction did not constitute "doing business within the state," within the purview of our statute. The facts of this case are wholly different from the facts here presented.

In the case of Harleston v. West Louisiana Bank, supra, the foreign corporation bank had loaned money and had acquired a trust deed on a certain gravel pit in Mississippi to secure the payment of the loan. There was a failure to pay the debt, and due to this loan the bank acquired the gravel pit, because it could not otherwise protect itself. This court held that the leasing of the gravel pit by the bank under those circumstances did not constitute "doing business within the state." We do not think either of those cases control here, or assist in the solution of the question presented.

Appellant cites 14-A C. J. 1279, section 3986: "A foreign corporation is not doing, transacting, carrying on, or engaging in business in a state, within the meaning of the statutes under consideration, by the doing of acts therein which are merely preliminary to the transaction of the business for which the corporation is organized. Thus it has been held that a foreign corporation does not come within the meaning of such statutes by offering bids in the state on work to be performed therein, by entering into a contract to perform such

work, or by giving a bond to secure its performance of such contract.''

The leading case cited as supporting the above quotation is the case of State v. American Book Co., 69 Kan. 1, 76 P. 411, 412, 1 L. R. A. (N. S.) 1041, 2 Ann. Cas. 56, which does not seem to support the text, but as it is counsel's main reliance for reversal of this case we shall notice it carefully. The American Book Company, in response to an advertisement by a commission created by the legislature, had submitted its bid for the furnishing of text-books, and had entered into bond and made a contract. The American Book Company was a foreign corporation. On May 31, 1902, the book company entered into a contract with the text-book commission to furnish books. On June 7th thereafter quo warranto proceedings were instituted in the courts against the book company, and on July 1st a judgment was entered ousting it from doing business. On August 5th the book company complied with the corporation law of the state and was admitted to do business. On August 18th an action was brought in the name of the state for the cancellation of the contract it had theretofore made with the book company. When this action was brought, the book company had partially performed the contract, and was proceeding to a full discharge thereof.

We quote from the opinion of the court in construing its own statute: ''It does not anywhere use the terms 'unlawful,' 'illegal,' or 'void,' or any equivalent for them, as applied to the transaction of business without authority; and it does not declare any determination whatever to reach beyond the offending company and nullify wholesome business bargains in matters of lawful trade. Foreign corporations may be supervised, but business is not proscribed.'' The court then proceeds to say that the legislature did not omit reference to penalties by oversight, and concludes its statement with this significant language: ''While contracts are not invalidated, the binding force of obligations impaired, or the doing

of business forbidden, the citizen is allowed to interpose a bar to any relief *until* the proper certificate can be produced.'' (Italics ours.) It further declares that the purpose of the statute was not to penalize business transactions, and that the right of a citizen under that statute was only *to abate a suit until the statute was complied with*. That the execution of the bonds and contract by the company to supply books was preliminary is based upon its statement of facts. The business of the American Book Company to be done within the state as that of supplying the state with books, and before any books could be sold the company was required to establish agencies throughout the state, and to arrange with dealers for the purpose of carrying on such business in a particular way. The preliminary negotiations with the state text-book commission, whereby the book company became obligated to enter upon, and conduct, the contemplated business, was not the doing of business itself within the meaning of the statute. The Kansas court used this language: ''If it be an essential feature of the business of a corporation to promote contracts, as a broker may do, then the making of contracts by such company may constitute the doing of business, but no such question is presented here.''

Appellant also cites the case of Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 S. Ct. 739, 28 L. Ed. 1137. The supreme court of the United States in that case, citing Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, held that the statute there under consideration could not be construed to impose upon the foreign corporation limitation of its rights to make contracts in the state for carrying on commerce between the states. The contention was presented to the supreme court of the United States that the doing of a single and isolated act of business by a foreign corporation was not a violation of the statute, and the language of the Colorado statute was ''to carry on business;'' but it is clear, from reading the concurring opinion of Mr. Justice MATTHEWS, that

the case was based upon the fact that the foreign corporation was engaged in interstate commerce with reference to the transaction there under consideration.

We have not referred to all the cases cited by counsel for the appellant, because it would simply burden this opinion with extraneous and in a measure immaterial matter. One test of whether or not a foreign corporation is "doing business" within the meaning of our statute is whether or not it is doing such acts as are within the function of its corporate powers. We have here a case where the appellant, foreign company, spent three months undertaking to make many contracts of the same kind with many citizens of the state, all of which were to be executed and performed within the state. It did promote the building of a canning factory in the city of Starkville; it did induce two hundred people to make separate and several contracts with them; it executed the contract in Mississippi; it did not have the contract sent to the foreign office for approval and the contract itself was to be performed in Mississippi; so the interstate commerce feature does not enter here. We do not think this is an isolated transaction. The foreign company secured two hundred subscriptions, and their business was to get these contracts—they began to carry on their business from the time they solicited and obtained the first subscription.

We do not think the two cases which we have considered above are in point here, but we think the case is controlled by Quartette Music Co. v. Haygood, supra, in which it is said that a contract made without first complying with the provisions of the above quoted statute could not be enforced in the courts of this state.

That is the policy of this state, and while this case appears to be hard, in that finally the foreign corporation did comply with the law, yet in so far as it affects this contract the compliance cannot be made to relate back to the date of its execution. It was either enforceable on the date of its execution, or unenforceable. Un-

der the statute, as construed by this court, the contract was not enforceable on its execution, and when the one contract was signed it was, in effect, a volume of business already transacted amounting to two hundred separate and distinct contracts, in so far as the relation created between the foreign corporation and the several subscribers is concerned. We cannot vary the law, because our sympathy may be excited by the harshness of its particular application to the particular individual. This foreign corporation was doing business within the purview of our statute at the time it made the contracts referred to, and the subsequent procurement of a right to do business in the state could not relate back to the voidable transaction.

Affirmed.