WILEY ELECTRIC CO. OF JACKSON *et al. v.* ELECTRIC STORAGE BATTERY CO.

(Division A.   May 1, 1933.)

[147 So. 773.   No. 29776.]

Howorth & Howorth, of Jackson, for appellants.

844

**R. H. & J. H. Thompson,** of Jackson, for appellee.

Argued orally by **Mrs. Lucy Somerville Howorth,** for appellant.

**Cook, J.,** delivered the opinion of the court.

The Electric Storage Battery Company, a New Jersey corporation, instituted this suit in the circuit court of Hinds county, Mississippi, against H. A. Wiley, an individual, the Wiley Electric Company of Jackson, Mis-

sissippi, and Wiley Electric Company of Greenville, Mississippi, on two promissory notes for the aggregate sum of ten thousand eight hundred ninety-two dollars. Upon the filing of defensive motions and pleas, a nonsuit was entered as to H. A. Wiley, and the cause was tried before the court without the intervention of a jury, resulting in a judgment in favor of the plaintiff for the full amount sued for; and from this judgment this appeal was prosecuted.

The suit was brought on two promissory notes, dated and executed at Jackson, Mississippi, payable to the appellee at the Capital National Bank of Jackson, Mississippi, and secured by an assignment of stock of the appellant corporations. Each of the appellant corporations filed a motion to dismiss the suit on grounds, in substance, as follows: That the appellee, a foreign corporation, was on and prior to June 1, 1928, authorized to do business in the state of Mississippi, and was doing business in said state, but was not entitled to bring or maintain any action or suit in any of the courts of this state, for the reason that it had failed to comply with the provisions of section 11 of chapter 90, Laws of 1928, in that it did not, on or before June 1, 1928, file in the office of the secretary of state written power of attorney designating the secretary of state, or in lieu thereof another agent, as its agent for service of process, and had not since that date filed, in the office of the secretary of state of Mississippi, any such power of attorney or designation of a resident agent.

Section 11, chapter 90, Laws of 1928, provides, in part, as follows:

"That every foreign corporation doing business in the state of Mississippi, whether it has been domesticated or simply authorized to do business within the state of Mississippi, shall on or before June 1, 1928, file a written power of attorney designating the secretary of state or in lieu thereof designate an agent as above provided in this section, as its agent upon whom service of process may be had in the event of any suit against said corporation; and any foreign corporation hereafter doing busi-

ness in the state of Mississippi shall, after the date of the passage of this act, file such written power of attorney designating said secretary of state or other lawful agent as its agent upon whom process may be served, before said foreign corporation shall be domesticated or authorized to do business in this state, and said secretary of state shall be allowed such fees therefor as is herein provided for designating resident agent in section 8 of this act. And any such corporation failing to comply with the above provisions shall not be permitted to bring or maintain any action or suit in any of the courts of this state.

''Every corporation, foreign or domestic, except those having no authorized capital stock and not organized for individual profit, shall also, file with the secretary of state, on or before the 30th day of June of each year, a written statement showing its name, domicile in this state, principal office within or without this state, character of its business, name and address of its resident agent in this state, if any, its authorized capital stock, its outstanding capital stock, and the names and addresses of its officers and directors, which statement shall be signed by one or more of its officers or by two of its directors. . . .''

In support of these motions to dismiss, there was offered a certificate of the secretary of state to the effect that appellee, a foreign corporation; incorporated under the laws of the state of New Jersey, was duly admitted and qualified to do business in this state on March 3, 1903, and that it had not on or before June 1, 1928, or since, filed in his office written power of attorney designating the secretary of state, or in lieu thereof designating an agent, for service of process, as provided by section 11, chapter 90, Laws of 1928, and that it had not filed in his office annual reports for the years 1928, 1929, and 1930, as required by said chapter 90, Laws of 1928, or otherwise complied with any of the provisions of said chapter.

These motions were overruled, and the appellants then filed pleas of the general issue, with notice thereunder that evidence would be offered to establish a failure of consideration and breach of agreement, and also two special pleas setting up the same matters as were made the grounds of the motions to dismiss, and averring that the notes sued on were given for a balance of account claimed by the appellee to be due by appellants under contracts executed between appellee and appellants, which contracts were a part of the business of the appellee carried on in the state of Mississippi, at a time when it had not complied with said chapter 90, Laws of 1928, which business was alleged to have been carried on in the manner following:

That the appellee was and is incorporated under the laws of the state of New Jersey, and has its principal place of business and home office at Philadelphia, Pennsylvania, with branch offices in various cities, including Jackson and Greenville, Mississippi, and was engaged chiefly in the manufacture, sale, installation, and servicing of electric storage batteries and parts thereof; that under their contracts with appellee the appellants maintained branch storerooms for appellee in Jackson and Greenville, Mississippi, and from the dates of said contracts up to and after the time of the execution of the notes sued on, and until the breach of said contracts, the appellants continuously kept on hand a large stock of batteries and parts thereof for sale in Mississippi, and installed and serviced said batteries under the orders and directions of appellee; that, acting under the orders and directions of appellee, the appellants solicited, secured, and executed Exide battery authorized dealer contracts with many named motor companies and service stations; that they sold batteries to various and sundry persons and corporations, and installed and serviced such batteries under contracts called by appellee "Fleet Contracts," and did and performed any and all things in and about said business that were commanded, required, and expected by the appellee, its "sales organization," "service or-

ganizations," and its agents and representatives in the state of Mississippi, and that each of the appellants was a part and one of such organizations at the time the notes sued on were executed. It was further averred that the account was incurred and notes executed at a time when the appellee had not complied with the laws of the state of Mississippi, and was carrying on its business in the state in violation of the laws thereof, and that the notes were therefore void and uncollectible.

Upon the further hearing of the cause, over the objections of the appellants, the appellee offered in evidence the two notes sued on. Thereupon the appellants moved for judgment, and from the record it appears that lengthy testimony was heard upon this motion, but which, in effect, was a hearing on the merits of the cause. The forms of the contracts which the appellee executed with the appellants and other citizens and corporations in this state were introduced in evidence. The contract between the appellee, denominated therein Battery Company, and the appellants, called therein Purchaser, contains, among other things, the following provisions:

"First. The Battery Company agrees to sell to the Purchaser, and the Purchaser agrees to purchase from the Battery Company, f. o. b. the Battery Company's factory, Philadelphia, Pennsylvania, Exide Starting, Lighting and Ignition Batteries and parts, at the prices to storerooms for the same as fixed from time to time by the Battery Company. Schedule of current storeroom prices is attached hereto.

"Second. The Purchaser agrees to carry in stock in the city of Jackson, Mississippi, complete Exide Batteries and parts adequate to promptly fill all orders and to actively canvass the battery trade for sales of Exide Batteries and parts within the trading area assigned by the Battery Company to the Purchaser from time to time in conformity with the sales policies and methods prescribed by the Battery Company, and not to handle or sell any substitute for, imitation of, Exide material.

"Third. The Battery Company further agrees:

"(a) To keep the purchaser informed as to sales policies and methods calculated to promote sales, improve service and increase good-will.

"(b) To advertise Exide Batteries and Exide Battery Service through national mediums.

The Purchaser further agrees:

"(a) To pay the Battery Company, in accordance with the terms required by the Battery Company from time to time, for material furnished under this agreement.

"(b) To bill and collect for all materials sold by the Purchaser, the Battery Company to be in no way responsible for payments due the Purchaser for such materials.

"(c) To advertise locally, and at the Purchaser's own expense, the said Exide Battery Storeroom and the Purchaser as owner or proprietor thereof, in a manner and to an extent satisfactory to the Battery Company.

"(d) To handle repairs or replacements under the Exide Warranty in the manner and on the terms prescribed by the Battery Company.

"(e) That all and any use by the Purchaser of the trade marks, trade names and printed material of the Battery Company, especially of the trade names, Exide, Exide Batteries, Exide Battery Service, and Exide Battery Service Station, shall be at all times wholly subject to the control and direction of the Battery Company, and the use or display by the Purchaser of the terms, Exide Battery Service, Exide Battery Service Station, and the like, shall be discontinued immediately upon the cancellation of this contract.

"(f) That all Purchaser's cost and expense of establishing and continuing the business contemplated by this contract, and all Purchaser's cost and expense and loss of profits incident to the termination of the latter and consequent discontinuance of Purchaser's Exide Battery business shall be borne solely by the Purchaser. . . .

"Fifth. The Purchaser is not appointed to transact and shall not transact business, nor make contracts, with third persons in place of or on behalf of the Battery

Company, and the Purchaser is not employed or permitted to represent the Battery Company, or act for and in its stead."

Throughout the correspondence between the appellee and the appellants, which was offered in evidence, and in the contracts executed with Mississippi service stations, the stations of appellants were referred to as the Greenville and Jackson Exide storerooms or Exide warehouses. The form of the Exide battery authorized dealer agreements, which were entered into by the appellee with service stations over the state, is illustrated by the following agreement signed by the appellee and appellant Wiley Electric Company of Jackson and the Edwards Service Station, which reads as follows:

"City, Jackson State Miss.
"Date 5-3-29.

"The Electric Storage Battery Co., Philadelphia, Pa.

"Gentlemen: We desire to become an Authorized Dealer in Exide automotive replacement batteries upon your acceptance of this agreement.

"It is understood that you will furnish us with complete data on Exide batteries for replacement, including price sheets and such other sales information as you may publish from time to time.

"You will furnish us with a suitable sign which we agree to display. This sign is to remain your property and is to be returned to you immediately on request.

"It is understood that we will purchase our requirements of Exide automotive replacement batteries at Authorized Dealer prices as established by you. Shipments are to be made from Jackson, Miss.

"We understand that terms shall be cash (C. O. D.) or (Sight Draft attached to Bill-of-Lading) unless satisfactory credit relations are established and maintained.

"It is also understood that all and any use of your 'Exide' trade marks, trade names, signs and advertising matter shall be at all times subject to your control and direction, and that our use or display of such 'Exide' trade marks, trade names, signs and advertising matter

shall be discontinued immediately upon the termination of this agreement.

"It is further understood that this agreement shall continue in force until cancelled by either party hereto mailing to the other thirty (30) days' notice of such cancellation."

The "Exide Fleet Agreements" entered into by the appellee and appellants with customers owning a number of motor vehicles obligated the customer to purchase Exide batteries for his entire automotive battery requirements, at a fixed discount from list prices as the same varied from time to time, f. o. b. the privately operated Exide storerooms at Greenville or Jackson, Mississippi, where orders were to be placed. The said storeroom was thereby obligated to carry at all times sufficient stock to promptly fill such orders, and was obligated to advise as to the proper care and maintenance of, and to service, the battery equipment of such customers so as to insure uninterrupted battery service.

H. A. Wiley, who was offered by the appellee as an adverse witness, testified that representatives of the appellee traveled in this state taking orders and setting up, adjusting, estimating, and putting into operation motive power batteries. The proof shows that at least six Exide storerooms were maintained in this state, and in publications of appellee these storerooms were listed as a part of its "Exide Sales Service Organization." To these storerooms there were issued from time to time price lists, and the storerooms were required to maintain retail prices on a basis fixed by the appellee. In addition, it had contracts with service stations in about two hundred communities, covering practically the entire state. A representative of appellee spent a large part of his time in this state in contact with the established Exide storerooms, assisting them in the sale of Exide batteries, soliciting contracts with service stations for the sale of batteries by the storerooms, the execution of fleet agreements, and advising the local members of appellee's sales service organization. In addition, representatives of ap-

pellee were engaged in this state in soliciting sales of motive power batteries, and, in at least one instance shown by the evidence, in installing such motive equipment. The appellee paid one-half of the costs of local advertising done by these storerooms.

Out of the great mass of cases on the question of what constitutes doing business within the meaning of stat utes fixing the terms or conditions upon which foreign corporations may do business in a state, it clearly appears that the question is largely one of fact to be determined by the circumstances of each particular case, and it is generally held that, to constitute doing business within the meaning of statutory provisions forbidding corporations from doing business in a state until they have complied with the statutory requirements, there must be the doing of some of the works, or the exercise of some of the functions for which the corporation was created, and in considering this question the fact that a foreign corporation is authorized to do business in a state justifies the inference that it is doing business as authorized. 8 Thompson on Corporations (3 Ed.), sec. 6625.

In the case at bar the appellee corporation was duly qualified and authorized to do business in this state, and a course of continuous business, as set forth herein in the statement of facts, for more than ten years prior to the institution of this suit, in about two hundred communities, covering practically the entire state, was proved. During that time numerous contracts were customarily executed in this state. Traveling representatives were authorized and did execute contracts, and local storeroom operators were urged, if not required, to secure the execution of service station contracts and fleet agreements for the sale and servicing of appellee's products. Payments were regularly made by taking trade acceptances, and the notes herein sued on were dated, executed, and payable in this state. The retail prices at which the products of appellee were sold by the local storerooms were controlled and regulated by appellee. Territory was assigned to each local storeroom, and it was required to con-

fine its activities and operations to the assigned territory. The contract between the appellee and the operators of its storerooms required such storerooms to purchase batteries at prices fixed by the appellee, and to carry in stock complete Exide batteries and parts, and to actively canvass the battery trade "within the trading area assigned by the battery company to the purchaser from time to time in conformity with the sales policies and methods prescribed by the battery company, and not to handle or sell any substitute for, or imitation of, Exide material." It further provided that the purchaser should "handle repairs or replacements under the Exide warranty in the manner and upon the terms prescribed by the battery company," and also included a provision that "the purchaser is not appointed to transact, and shall not transact, business, nor make contracts, with third persons in place of or on behalf of the battery company and the purchaser is not employed or permitted to represent the battery company or act for or in its stead."

By the acts of the appellee the last-quoted provision of this contract was waived, as shown by the correspondence in evidence, in which it was constantly urging the appellants to activity in soliciting and securing the execution of contracts between prospective customers and the appellee. The provision with reference to the payment of freight and the cost of advertising by the appellants was also waived by the acts of the appellee as hereinbefore set out. Upon all the facts herein set forth, as well as others appearing in the voluminous testimony and correspondence in the record which throw light upon the appellee's method of doing business, we think it must be held that it was doing business in this state within the doctrine and the rule announced in the case of Peterman C. & S. Co. v. Blumenfeld, 156 Miss. 55, 125 So. 548. See also, the case of McNeill et al. v. Electric Storage Battery Co. et al., 109 S. C. 326, 96 S. E. 134, where the supreme court of South Carolina held that doing business with a citizen of that state under a contract similar in form and legal effect to the storeroom contract between the appel-

lee and the appellants constituted doing business in that state. It is admitted, or established, that the appellee had not complied with the provisions of section 11, chapter 90, Laws of 1928, which provides that any such corporation failing to comply with the provisions thereof shall not be permitted to bring or maintain any action or suit in any of the courts of this state. While the particular application of this statute may be harsh, the provision is mandatory, and we cannot do otherwise than enforce it.

The appellants present extensive argument and citation of authorities to sustain the view that the burden was upon the appellee to show that it was not doing business in this state, and that, in the absence of an allegation in the declaration of compliance with the statute and capacity to sue, the motion to dismiss the suit should have been sustained. However, in view of the fact that we have reached the conclusion that the evidence in the record establishes that the appellee was doing business in this state in violation of the provisions of this statute, it is unnecessary to express any opinion on these interesting questions. This statute closes the doors of the courts of this state to foreign corporations doing business in this state in violation of its provisions, and consequently upon the proof in this record we think the suit should have been dismissed. The judgment of the court below will therefore be reversed, and judgment will be entered here dismissing the cause.

Reversed and dismissed.