REFRIGERATION DISCOUNT CORPORATION *v.* TURLEY.

(Division B. Nov. 25, 1940.)

[198 So. 731. No. 34187.]

Ernest Kellner, Jr., of Greenville, for appellant.

**Wynn, Hafter & Lake**, of Greenville, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, the Refrigeration Discount Corporation, filed suit in the Chancery Court of Washington County, against G. W. Turley, to recover certain indebtedness claimed to be due on the purchase of installment contract notes which had been assigned to it as a finance corporation, by a firm in Memphis, Tennessee. This firm had sold the appellee refrigerating appliances, principally Kelvinators, taking a written contract therefor, which it then assigned and discounted to the Refrigeration Discount Corporation. The appellant, complainant in the court below, also prayed for the appointment of a receiver to take charge of Turley's business pending the decision of the Court, which was granted without a hearing, on the allegations of the sworn bill, but which was revoked a few days thereafter, on motion. The court below, on a hearing of the cause on motion, bill, answer and proof, allowed damages for the wrongful suing out of the receivership, in the amount of $12.098.73, holding that the appellant was a foreign corporation, doing business in the state of Mississippi without filing a copy of its charter, and the appointment of an agent in the state upon whom process could be served. From the judgment so rendered this appeal is prosecuted.

The appellant is a foreign corporation with its business office in Detroit, Michigan; its sole business, it is claimed, being to finance dealers in refrigeration products, principally Kelvinator products. It maintained no office or agency in Mississippi, and was not licensed to do business in this state. However, it sent its agents into Mississippi after contracts were assigned to it, to see how its business was being conducted after such assignments.

The appellee, a resident of Greenville, Mississippi, was a dealer in refrigeration products, such as electric refrig-

erators, and other household and commercial appliances usually sold by dealers engaged in such business.

The bill alleged that the appellant was a nonresident, with its place of business in Detroit, Michigan; and that it engaged in the business of discounting for cash for dealers engaged in selling Kelvinators and other electrical appliances, installment sales contracts for unpaid balances thereon. It was alleged that the appellee had sold the refrigerators and appliances to various persons, on the installment plan; and that each of the contracts were in default for several months—from three to fourteen; the amount of the purchase price, the period of delinquency, and the unpaid balances being set forth in the bill, such unpaid balances amounting to $3,355.96.

A copy of the form of contract and assignment is made an exhibit to the declaration.

The refrigerators involved in the suit, with a few exceptions, were sold to the appellee by Fulmer, a Memphis dealer, who assigned them to the appellant. In the contract it was recited that the seller sells, and the buyer purchases, property (giving the number) for a cash payment, and other data, setting out the terms upon which the property was bought, with the days of the month upon which payments were to be made over a period of time covered by the contract. This contract recited that all payments by the purchaser were to be made at the office of the Refrigeration Discount Corporation, in Detroit, Michigan; and that the purchaser acknowledges that the seller is not an agent of the corporation, to receive payment of the moneys payable under the contract, that all payments are to be made to the said corporation, and that no payments not so made will be credited unless and until received by said corporation. In the contract it is further provided that until the purchase price is paid in full, the merchandise, or any additions or substitutes, shall be and remain the sole personal property of the seller. The purchaser agreed to pay all expenses, charges and costs, including a reasonable attorney's fee

in event the seller exercises any of his rights under the contract, either by taking the property or filing a legal action to enforce any remedy provided for therein. In the contract, also, the purchaser agrees to take good case of the merchandise, to insure it against the hazard of fire, paying the premiums thereon, and to be responsible for loss by theft, or otherwise; and that the proceeds of insurance paid in event of loss shall be paid to the seller or his assigns in reduction of any balance then due by the purchaser. The purchaser agreeing not to remove the merchandise from the address he has given without the consent of the seller or his assigns.

In the contract it is further agreed that in case of default by the purchaser on any of his obligations, or if any levy or attachment should be made, or proceeding in bankruptcy be instituted against the purchaser or his property, or if an application for a receiver be made for the business of the purchaser, endangering the merchandise, the entire amount shall immediately become due and payable, and the seller or his assigns may collect same, or without notice or liability for damages, take possession of the merchandise without due process of law; all payments made by purchaser to be considered as payment for the use of said merchandise, and as liquidated damages for such default; and the seller or his assigns may sell the merchandise so retaken at public or private sale, and from the proceeds thereof they may deduct all expenses incident to such act (including a reasonable attorney's fee), the balance to be applied against the amount due; and any surplus to be paid to the purchaser, or any deficiency to be paid by him with interest.

It was further stipulated that, "It is understood and agreed that this instrument and the seller's interest therein may be offered by the seller for discount to Refrigeration Discount Corporation of Detroit, Michigan. To induce said corporation to accept such assignment, the purchaser hereby agrees and represents to such

corporation that such assignment shall be free of any and all defenses which the purchaser may or might have against the seller. No action taken by the seller or his assigns to enforce or any waiver of any rights under the mechanics lien law shall prejudice any of the rights stated above." It then provided for the furnishing of certain information indicated in the contract.

The contract also stated: "For value received, we hereby sell, assign and transfer to Refrigeration Discount Corporation, its successors and assigns, the contract on the reverse hereof and all right, title and interest in and to the property therein described, and all rights and remedies thereunder, including the right to collect all installments due thereon, and the right either in assignee's own behalf or in our name, to take all such proceedings, legal or otherwise, as we might have taken, save for this assignment; and warrant that the contract is genuine, enforceable, and the only contract executed for the equipment described therein; that all statements therein contained are true; that the equipment was delivered and accepted on . . ., and warrant the payment when due of each sum payable thereunder, and the payment on demand of the entire unpaid balance in the event of nonpayment by the customer of any sum at its due date or of any other default by the customer without first requiring assignee to proceed against said customer."

It also contained the following: "We agree that assignee may audit our books and records relating to paper sold to it and agree that without notice to us and without releasing our liability assignee may release any rights against and grant extensions of time of payment to the customer and we waive presentment and demand for payment, protest or notice of protest."

On the trial it appeared that the appellant had some contracts with a merchant at Vicksburg, and that some disagreement or trouble arose between them in regard to the contracts, and that these were sold to the appellee.

The refrigerators in question had a meter attached to them, in which the purchaser from the dealer would deposit money, to be taken up by the dealer monthly; and that the appellee endorsed these contracts, assumed liability to the appellant for payment; his note therefor being payable in Detroit, Michigan.

These contracts provided for the title to be retained in the appellant until paid for, the payments to be made, as stated, at the office in Detroit.

Some of the meters for the refrigerators were shipped to Greenville, and a bank in that place was requested by the appellant to have the contract signed, and the refrigerators, on the signing of the contract and payment of the first installment, were to be delivered to the appellee in Greenville, and kept by him until the amount due for the refrigerators was fully paid.

It is contended that this sending of papers to the Bank of Greenville to be executed, and the requesting of the bank to act for it, and to have the refrigerators delivered when the contracts were executed, constitutes the doing of business in the state of Mississippi.

The appellant, after these contracts were executed, and assigned to the appellant, sent agents to Greenville to see that the contracts were being carried out, and to inspect the books of the appellee, and make reports to appellant in regard to said matters.

During the existence of the contract, and before the filing of the suit, because of the manner in which the appellee was making payments, and conducting his business, credit was extended only to the extent of ninety per cent of the amount furnished to those whose credit was unimpaired by default, or negligence or unsatisfactory methods in conducting their business. The ten per cent withheld was for the benefit of the dealer, and would be assigned to him, or applied on his behalf when the said contracts were paid, instead of being given to him in advance.

After the appellee had been in default on the contracts,

as above stated, the contract was placed with a local attorney at Greenville for adjustment or the bringing of suit; and the attorney was threatening to proceed legally, and to secure a receivership, when it was agreed that if the appellee could raise as much as $1,200 to $1,500 to apply on the default, the account would be carried on under the same conditions. The appellee tried to raise this money, but failed.

The appellee also had an account with another concern, C. V. Hill & Company, and one of its representatives was in the appellee's place of business, and overheard the conversation between the attorney for the appellant and the wife of the appellee, in which a receivership was threatened; and this agent of C. V. Hill & Company advised that their refrigerators and other merchandise be stored in a fireproof place in Greenville. The appellee consulted an attorney, who advised, in view of the appellant's demands, that the refrigerators be stored in a fireproof place, including the products of the C. V. Hill & Company, and also those refrigerators, contracts for which had been assigned to the appellant.

Thereupon the attorney for the appellant applied for the appointment of a receiver; and a few days after such appointment the receiver was discharged by the court, and the cause came on for hearing on bill, answer and proof. On the hearing the Chancellor found that the appellant was doing business in the state of Mississippi; that it had not filed a copy of its charter, and appointed an agent upon whom process might be served, and was not entitled to maintain a suit in the courts of this state; and assessed damages and liabilities against the appellant as follows: reserves or holdbacks, $1,148.73; store rent, $50; salary to employee, $150; attorney's fee, $750; damage to business, $10,000; making a total of $12,098.73.

In its decree the court found that no usury was contracted for, or paid by appellee to the appellant on the contract sued on; that the appellant was indebted to the appellee in the following sums on account of reserves or

hold-backs, to-wit, $354.02, $724.54, $63.53, and $6.65, aggregating the sum of $1,148.73, as above stated; and, finally, that the appellee had sustained the following items of damage on account of the wrongful loss, etc.: one month's store rent, $50; salary to employee, one month, $150; attorney's fee, $750; damage to business, $10,000.

We have considered the question as to whether the appellant, under the above statement, was doing business in the state of Mississippi while failing to comply with the laws requiring foreign corporations to file a copy of their charter therein, and to appoint an agent or representative, upon whom service of process may be had. And in view of the conclusions we have reached upon this proposition, we think it is unnecessary to decide the other propositions involved.

In our opinion, the appellant was not doing business in this state within the meaning of section 4140, Code of 1930. This section reads:

"Every domestic corporation shall maintain an office in the county of its domicile in this state, either in charge of an officer or officers of the corporation, or in charge of some persons or corporation duly designated as resident agent for the service of process by the directors (by whatever named [name] called) of such corporation, a duly certified copy of the resolution designating such resident agent, and the written acceptance of such agency by the agent, to be filed with the secretary of state. In the event of the death, resignation or removal of such resident agent, another shall be substituted within thirty days in the same manner and accompanied by the same fee as in the former appointment; and until such substitution, or in event of the failure of a corporation to so designate and qualify a resident agent where one is required by this act, the secretary of state shall be the agent for the service of process upon such corporation without resident agent, until one shall have been designated as herein provided.

"Every foreign corporation doing business in the state

of Mississippi, whether it has been domesticated or simply authorized to do business within the state of Mississippi, shall file a written power of attorney designating the secretary of state or in lieu thereof an agent as above provided in this section, upon whom service of process may be had in the event of any suit against said corporation; and any foreign corporation doing business in the state of Mississippi shall file such written power of attorney before it shall be domesticated or authorized to do business in this state, and the secretary of state shall be allowed such fees therefor as is herein provided for designating resident agents. Any foreign corporation failing to comply with the above provisions shall not be permitted to bring or maintain any action or suit in any of the courts of this state.''

We do not think it is necessary to enter upon a review of the many decisions upon this subject in this state—we content ourselves with citing the following: Wiley Electric Co. of Jackson v. Electric Storage Battery Co., 167 Miss. 842, 147 So. 773; Marx & Bensdorf, Inc., v. First Joint Stock Land Bank of New Orleans, 178 Miss. 345, 173 So. 297; Dodds v. Pyramid Securities Co., Inc., 165 Miss. 269, 147 So. 328; North American Mortg. Co. v. Hudson, 176 Miss. 266, 168 So. 79; C. I. T. Corp. v. Stuart, 185 Miss. 140, 187 So. 204; A. C. Crenshaw v. State of Arkansas, 227 U. S. 389, 401, 33 S. Ct. 294, 57 L. Ed. 565.

In reference to the contention that the meter refrigerator, which was delivered at Greenville, with a contract to be signed there, the notes to be paid at Detroit, Michigan, title to be vested in the appellant until all the notes are paid, it will be observed that the property sale does not become complete, and the title become vested, until payment is so made by the appellee to the appellant at Detroit, Michigan. Furthermore, this transaction was made with reference to property which had been sold to another firm under a contract, the obligation of which the appellee had assumed and contracted to pay, was not a doing of business in the state of Mississippi, in the

sense indicated in the statute, as construed by the Court. The cases above cited will demonstrate, we think, that the last act to be performed by the parties, essential to the completion of the contract, was to be performed in Detroit, Michigan. The appellant was not engaging in a general business, but in a transaction enabling the appellant to realize from a contract formerly made with a merchant at Vicksburg, Mississippi.

In view of the fact that the court below found that the appellant was doing business in the state of Mississippi without complying with the laws thereof, in which holding we think he was in error, it is unnecessary, and would be improper, to decide the other matters. In view of its decision thereon, the court below should only have decided this question, with the question of damages flowing from the wrongful suing out of the receivership. If upheld here, this decision of the Chancellor would have rendered any other matters immaterial, because of the holding that the party had no right to litigate in the courts—hence that should have been the only question determined.

It appears from the allegation of the bill that at the time the bill was presented, if its allegations were, in fact, true, the receivership was proper. Ordinarily receiverships should not be granted without a hearing, but there are emergency cases where this should be done.

We only pass upon the question of whether the appellant was doing business in the state in violation of law; and in view of our holding on that question we remand the cause for further proceedings in the court below.

Reversed and remanded.