SNIPES, et al. *v.* COMMERCIAL & INDUSTRIAL BANK, et al.

No. 39771        November 14,1955        83 So. 2d 179

October 17, 1955

82 So. 2d 895

*Sam E. Lumpkin,* Tupelo; *William A. Bacon,* Jackson, for appellants.

*Harold Cox,* Jackson; *Canada, Turner, Russell & Alexander,* Memphis, Tennessee, for appellee.

LEE, J.

This litigation originated as an attachment in chancery. Commercial & Industrial Bank, a banking corporation chartered and doing business under the laws of the State of Tennessee, with its principal place of business in the City of Memphis, filed its bill of complaint in the Chancery Court of the First Judicial District of Hinds County against Guy G. Snipes and wife, Mrs. Eola Cummings Snipes, residents of the City of Memphis, Tennessee, but who operated the partnership firm of Snipes Pontiac Company, in the City of Batesville, Mississippi, as principal defendants, and the Home Insurance Company and seven other insurance companies, chartered under the laws of other states, but doing business in the State of Mississippi.

The controversy arose out of the financing by the Bank of certain wholesale and retail transactions in the nature of floor-planning, and the discount of notes for the balance due the motor company on sales of automobiles and appliances. In addition, the Bank held a note of the company which evidenced a loan of $2,000, and a second mortgage on the company's place of business. Fire insurance on the company's building was carried by the eight defendant insurance companies. This building was destroyed by fire on or about July 11, 1953.

The complainant Bank sought an adjudication and decree against the Snipes for the amount of its demand, and to impound the monies due the Snipes in the hands of the insurance companies on account of the fire for the satisfaction of the court's decree.

The answer of the Snipes challenged the jurisdiction of the court as to the attachment; charged that the Bank could not maintain its suit in the state courts because it

was doing business in this State and had not previously complied with the law precedent thereto; that the Bank had dealt unfairly and inequitably with its securities and was itself responsible for whatever loss that it might have sustained; that the claim of the Bank was usurious; and by its cross bill also sought to cancel the second mortgage.

The insurance companies also raised both the question of jurisdiction of the court in the attachment against them and the right of the Bank to sue in the courts of the State because of its failure to qualify therefor, and other points.

The several motions to quash were overruled, and the insurance companies paid the amount for which they were liable into the registry of the court.

On final hearing, the court awarded a decree to the complainant in the aggregate principal sum of $26,811.55, which was ordered to be paid out of the funds in the registry of the court, and dismissed the cross bill.

From the decree entered, the Snipes prosecuted a direct, and the Bank, a cross, appeal.

The appellants contend that the trial court was in error in refusing to quash the attachment. Among other reasons, they say that this extraordinary remedy should not be afforded in a case such as this; that the insurance companies were in Tennessee as much as in Mississippi, and could not be held to be residents under the attachment act; and that the benefit to a nonresident appears to be greater than that which is extended to a citizen of the State.

The action was instituted under Sections 2729 and 2730, Code of 1942, which are as follows:

"Section 2729. Non-residents—absent or absconding debtors. — The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any con-

tract, express or implied, or arising ex delicto against any non-resident, absent or absconding debtor, who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor. The court shall give a decree in personam against such non-resident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance."

"Section 2730. Attachment against non-residents — how effects or indebtedness bound. — When a bill shall be filed for an attachment of the effects of a non-resident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness of the defendant in this state to such non-resident, absent or absconding debtor, it shall be sufficient to bind such effects or indebtedness, that the summons for the defendant resident in this state shall have stated in or endorsed upon it the nature and object of the suit, and that it is to subject the effects in the hands of the resident defendant, and the indebtedness of such defendant to the non-resident, absent or absconding debtor, to the demand of the complainant; or, instead of such statement on the summons, a copy of the bill may be served with the summons, and shall bind the effects or indebtedness from the time of such service."

In the case of Bean v. Bean, 166 Miss. 434, 147 So. 306, Mrs. Jenny Bean, a resident of Illinois, sought an attachment in the Chancery Court of Hinds County against Fred A. Bean, a resident of Alabama, as the principal defendant, and Louisiana Oil Corporation, a nonresident but authorized to do and doing business in Mississippi, for which Bean worked in Alabama, and which corporate defendant, it was alleged, owed and had in its hands effects of Fred Bean. In the motion to quash, it was contended that Fred Bean's employment was in Alabama; that the funds for the payment of his salary were never within Mississippi; that the corporation was

also doing business in Alabama; that the Mississippi court was without jurisdiction; and that to require an answer in such case was violative both of the Fourteenth Amendment to the Constitution of the United States and of Section 14, Article 3, Constitution of 1890. Other grounds were also set up. The opinion declined to overrule Southern Pacific Railway Company v. A. J. Lyon & Company, 99 Miss. 186, 54 So. 728, 34 L. R. A. (N.S.) 234, and held that the chancery court had jurisdiction. There is no valid distinction between the Louisiana corporation, a foreign corporation doing business both in Alabama and Mississippi, in that case, and the eight foreign corporations in this case, which were doing business both in Tennessee and Mississippi. In this case, the corporations were persons within the meaning of the attachment statutes, supra. Section 689, Code of 1942. They themselves could sue in the State, and they are "liable to be sued or proceeded against, by attachment or otherwise, as individual nonresident debtors may be sued or proceeded against * * *''. Section 5344, Code of 1942. Cf. Comstock v. Rayford, 1 S & M 423; Freeman v. Malcolm, 2 S & M 53.

Consequently the trial court did not err in overruling the motions to quash.

The appellants again contend here, as they did below, that the appellee was doing business in the State and was therefore without right to bring this suit in the state court by reason of Section 5319, Code of 1942, because it had not qualified to do business in the State.

The proof for the Bank was to the effect that the original contract, together with the first loan, was made in the office of the company at Memphis; that all floor-plan financing was made in Memphis; that the conditional sales contracts were delivered to its Memphis office, and were there discounted and the money paid to the Snipes; that it sent employees to Mississippi only to check cars on which paper had been discounted, to collect delinquent

accounts, and to repossess motor vehicles and other appliances; that the Snipes, from time to time, accepted payments from their customers on account of outstanding conditional sales contracts and either forwarded the money to the Memphis office or delivered it to representatives of the Bank at Batesville; that, following the fire, it sent several representatives in and around Batesville to collect delinquent accounts and repossess vehicles and merchandise on which it had liens, and that, in several instances, its representatives accepted payments on current accounts and issued receipts therefor. It sold some automobiles to persons in Mississippi, but not until the sale had in fact been approved by the Bank in its Memphis office.

On the contrary, the evidence for the appellants was to the effect that the original contract was entered into at Batesville; that loans were made at their office; and that after the fire, the Bank practically took over the motor company's office as a place to run its business.

██ ██ The chancellor heard the witnesses and saw their demeanor on the stand. On this sharply disputed issue of fact, it was his duty to determine which version was true. His finding of fact accorded largely with the proof which was offered by the Bank. That proof rested not only on human testimony, but also on strong and unimpeachable documentary evidence. From all of which, he concluded that the Bank was not doing business in Mississippi within the meaning of Section 5319, supra.

██ ██ A good statement of doing business is found in 23 Am. Jur., Foreign Corporations, Section 361, p. 337, as follows: "as a general proposition upon which most of the authorities agree in principle, subject to such modifications as may be necessary in view of the particular issue or of the terms of the statute involved, it is recognized that a foreign corporation is 'doing,' 'transacting,' 'engaging in,' or 'carrying on' business in the state when, and ordinarily only when, it has entered the state

by its agents and is there engaged in carrying on and transacting through them some substantial part of its ordinary or customary business, usually continuous in the sense that it may be distinguished from merely casual, sporadic, or occasional transactions and isolated acts.''

In North American Mortgage Company v. Hudson, 176 Miss. 266, 168 So. 79, the mortgage company never had an office in the State. It had purchased mortgages in the State from Mortgagees, and ''in a number of cases, acquired land here through foreclosures, and pending the sales of property so acquired would, through its local attorney, rent same, and it had sold some property in Mississippi.'' The opinion said that: ''The collecting of notes alone, and the foreclosure of deeds of trust by an agent in the State of Mississippi, who may, pending such foreclosures, rent or lease the property, where the purpose of the company is merely to realize upon such mortgages, and other securities, is not doing business within the meaning of the Mississippi statutes on the subject.'' The following cases were cited: Long Beach Canning Co. v. Clark, et al., 141 Miss. 177, 106 So. 646; Dodds v. Pyramid Securities Co., Inc., et al., 165 Miss. 269, 147 So. 328; Harleston v. West Louisiana Bank, 129 Miss. 111, 91 So. 423; Hessig-Ellis Drug Co. v. Wilkerson, et al., 115 Miss. 668, 76 So. 570, and Saxony Mills v. Wagner, 94 Miss. 233, 47 So. 899, 23 L. R. A. (N. S.) 834, 136 Am. St. Rep. 575, 19 Ann. Cas. 199.

In Yellow Manufacturing Acceptance Corporation v. American Oil Company, 191 Miss. 757, 2 So. 2d 834, the acceptance corporation, a foreign corporation, purchased the contracts covering six automobiles from Pearce. After repossession of the vehicles, they were left with Pearce to sell, subject to approval of the company. It was held that this was not doing business. The Court said: ''A foreign corporation sending agents into this state to solicit the purchase of reserve title purchase money contracts, and purchasing such contracts at its

office outside of the state, was not doing business in this state within the meaning of the statute.'' The following cases were cited: Refrigeration Discount Corp. v. Turley, 189 Miss. 880, 198 So. 731; Wiley Electric Co. v. Electric Storage Battery Co., 167 Miss. 842, 147 So. 773; Marx & Bensdorf, Inc. v. First Joint Stock Land Bank, 178 Miss. 345, 173 So. 297; Dodds v. Pyramid Securities Co., 165 Miss. 269, 147 So. 328; North American Mortg. Co. v. Hudson, 176 Miss. 266, 168 So. 79; C. I. T. Corp. v. Stuart, 185 Miss. 140, 187 So. 204. Again it was said therein: ''Nor does the fact that the Acceptance Corporation, after acquiring the automobiles, undertook through Pearce and his employes to dispose of them to purchasers, constitute doing business in this state under the statute. North American Mortg. Co. v. Hudson, 176 Miss. 266, 168 So. 79; Harleston v. West Louisiana Bank, 129 Miss. 111, at page 120, 91 So. 423. Such action was a mere incident to the original purchase and acquisition of the contracts. It was a step toward realizing on the contracts and closing up the matter. In other words, the character of the original transaction, by means of which the Acceptance Corporation acquired the contracts, colored everything done thereafter toward enforcing them. Again, in different language, they were foreign contracts to begin with, and continued so to the end, notwithstanding that in order to enforce them it was necessary to resort to local action.'' See also Shemper v. Latter & Blum, Inc., 214 Miss. 113, 58 So. 2d 359; J. R. Watkins v. Flynt, 72 So. 2d 195 (Miss.).

The principle involved in Case v. Mills Novelty Co., 187 Miss. 673, 193 So. 625, and the cases which follow it, is not here present. There, under the written order which the foreign corporation accepted out of the state, it agreed to service the ice cream dispenser for one year. In order to carry out the agreement it employed a local mechanic. Thus the servicing was a local transaction. It was not incidental to, or necessary for, the formation of

the contract. Consequently it was subject to supervision and control by the state, and, for that reason, the corporation was held to be doing business in the State.

From the above citations, it is clear that there is abundant authority to sustain the correctness of the learned chancellor in applying those legal principles to the version of facts, which he resolved on a sharply disputed issue.

The evidence did not sustain the appellants' claim that the Bank practiced usury. The $2,000 note and the $10,000 mortgage on their place of business had the effect of granting to appellants additional credit. Consequently the contention that these two instruments were without consideration is untenable.

The proof for the Bank showed that the $2,000 note had not been paid, and that the deficiency on wholesale transactions amounted to $1,583.88 and on the discount contracts to $30,246.08. It went into great detail to show that, after securing repossessions, the Bank made sales in accordance with its contractual obligations, and obtained full value in the sale of those vehicles and appliances. On the contrary, the evidence for the appellants was in direct conflict with the Bank's claim, and was to the effect that the Bank sold for $18,672.79 motor vehicles which had a reasonable wholesale value of $41,850 and a retail value of $54,830. There was a great diversity in the opinion of the witnesses as to the condition of cars at the time of repossession. In some instances it was shown that automobiles were purchased for nominal considerations, and shortly thereafter, were sold by the purchasers for several times the amount which they had paid for them.

From all of the evidence, the court found as a fact, that in many cases, repossessions were not made until the paper had been long past due; that, because it was protected by a reserve, the Bank, in some of its sales, treated the vehicles as mere junk when they in fact had

substantial value; and that the Bank was not as diligent as it should have been, and did not deal equitably with its security. Consequently the court, in its final decree, disallowed nearly one-third of the Bank's demand.

██ ██ There was substantial evidence to support the chancellor's finding in this respect. ██ ██ It is well-settled, in this kind of case, that when the seller or his assignee recovers possession, he must deal with the property as security and with reference to the equitable rights of the purchaser. Roberts v. International Harvester Company, 181 Miss. 440, 180 So. 447; Commercial Credit Company v. Spence, 185 Miss. 293, 184 So. 439; Associates Discount Corporation v. Ruddock, Miss.      , 81 So. 2d 249.

Due consideration has been given to the several contentions which have been made by the parties on both the direct and the cross appeal. The decree of the court below, in all respects, is supported by substantial evidence. We find no reversible error in the record. Consequently the cause is affirmed on both direct and cross appeal.

Affirmed on direct and cross appeal.

*Kyle, Arrington, Ethridge* and *Gillespie,* JJ., Concur.

ON MOTIONS TO DISMISS APPEAL

GILLESPIE, J.

Appellee filed its motion to dismiss this appeal on the ground that the appellants did not perfect their appeal by filing a bond within the time allowed for appeal. The trial court fixed the bond at $1,000 for an appeal without supersedeas. The appellant filed a petition for appeal and recited therein that he was depositing with the clerk of the trial court the sum of $1,000 as security for the costs. The $1,000 was deposited in accordance with the petition. The cost of the transcript was not prepaid. Appellant contends that he has met the requirements of the

statutes as to the filing of a bond, but requests the court to be allowed to file the proper bond or do whatever may be necessary to perfect his appeal.

Section 1162 of the Code of 1942 provides that an appeal without supersedeas may be had upon the filing of a bond in the penalty of $500, or the filing of a $100 bond if the cost of the transcript is prepaid. If the cost of the transcript is prepaid, the appellant may deposit with the clerk the sum of $100 in lieu of the $100 bond.

■■ A deposit of a sum of money equal to the penalty of the bond does not satisfy the requirements of the statute for an appeal without supersedeas in a civil case except where the cost of the transcript is prepaid, in which even a deposit of $100 may be made in lieu of the bond.

■■ Section 1959 of the Code of 1942 provides that all defects and irregularities in the application for appeal, and the bond, may be cured by amendment, so as to perfect the appeal and obtain the judgment of this Court in the case. This statute is broad in its terms and we should not limit its application to trivial defects and irregularities. It should be liberally construed in favor of allowing the case to reach final judgment on the merits. ■■ We hold that appellant may file a good and sufficient bond in the sum of $1,000 within seven days from this date, but upon failure to do so the case will be dismissed. The following cases indicate the various defects and irregularities held curable in perfecting an appeal: Wills, et al v. Howie Bros., 109 Miss. 568, 68 So. 780; Lovett v. Harrison, 162 Miss. 814, 137 So. 471; Purity Ice Cream Co. v. Morton, 157 Miss. 728, 127 So. 276; Gericevich, et al v. Bonham, et al, 177 Miss. 423, 170 So. 680; Williams v. Walton & Son, et al, 202 Miss. 641, 32 So. 2d 131.

The case of Howell v. Miller, 151 Miss. 372, 118 So. 178, is not applicable here because the appellant in that case did not offer to cure the defect. Neither is the case

of J. R. Watkins Co. v. Guess, et al, 196 Miss. 438, 17 So. 2d 795, in point, for that case involved an appeal from the justice of the peace court to the circuit court. No offer was made to cure the defect and give the circuit court jurisdiction; besides, the defect in the bond there was curable, if at all, under Section 1208, Code of 1942, a statute nothing like as broad and liberal as Section 1959. Gaudet v. Mayor and Board of Aldermen of the City of Natchez, (Miss.), 42 So. 2d 808, is no authority here because that was a motion to advance filed within the time allowed for perfecting the appeal in the court below, and the court never reached the question of whether the defects in the appeal were curable under Section 1959 of the Code.

There is no merit in the motion of appellant for dismissal of the cross appeal, and it is hereby overruled.

Appellee's motion to dismiss the appeal is overruled provided appellant files a good and sufficient bond, with proper sureties, in the penal sum of $1,000 within seven days from date, in default of which the appeal will be dismissed.

Motion to dismiss cross appeal overruled. Motion to dismiss direct appeal overruled.

All justices concur, except McGehee, C.J., who took no part.